UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case #: 00 - 6273 -CR- HUCK

United States of America

vs.

Anthony Trentacosta

_____/

## Defense Submission for Bond

Pursuant to this Honorable Court's request made late in the evening of Wednesday, October 25, 2000, upon conclusion of the evidentiary portion of the government's appeal of Magistrate Feldman's *Order Granting Bond*, Anthony Trentacosta hereby respectfully tenders the following submission for appropriate consideration in this matter and furthermore requests that bond for Mr. Trentacosta be again established, but either as a personal surety or smaller corporate bond. Mr. Trentacosta has already been judicially determined to be indigent; this matter is not being contested. {Hence the appointment of counsel pursuant to the Criminal Justice Act}.

# POINT ONE

Of the eight other individuals indicted in the instant case, *all* but two have been granted bond:

| | |
|---|---|
| Frederick Massaro | Pre-Trial Detained |
| Francis Ruggiero | Bond Granted |
| Ariel Hernandez | Pre-Trial Detained |
| Julius Bruce Chiusano | Bond Granted |
| Adam Silverman | Bond Granted |
| Carlos Garcia | Bond Granted |
| Charles Monico | Bond Granted |
| Anthony Banks | Bond Granted |

The two individuals pre-trial detained, are the two, and the only two, indicted in the potentially capital Count 18.   [see immediately following attachment, #1]

This is so <u>even though</u> the eminent lead counsel for the U.S. Attorney's Office requested  pre-trial detention for six (6) of these individuals and in the case of Mr. Trentacosta, after a full and fair evidentiary hearing in Atlanta, Mr. Trentacosta was granted bond.   [attachment #2]

LDL:ldl

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6273**

18 U.S.C. 1962(d)
18 U.S.C. 1959
18 U.S.C. 513(a)
18 U.S.C. 659
18 U.S.C. 892(a)
18 U.S.C. 894
18 U.S.C. 922(g)(1)
18 U.S.C. 1344
18 U.S.C. 2
18 U.S.C. 3

**CR - HUCK**

MAGISTRATE JUDGE
BROWN

FILED by _____ D.C.

SEP 1 9 2000

CLERK U.S. DIST. CT.

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,             )
                               )
v.                             )
                               )
ANTHONY TRENTACOSTA,           )
    a/k/a "Tony Pep,"          )        INDICTMENT
FREDERICK J. MASSARO,          )
    a/k/a "Freddie,"           )
    a/k/a "Uncle,"             )
FRANCIS RUGGIERO,              )
    a/k/a "Little Frankie,"    )
ARIEL HERNANDEZ,               )
JULIUS BRUCE CHIUSANO,         )
ADAM TODD SILVERMAN,           )
    a/k/a "Sonny,"             )
CARLOS GARCIA,                 )
CHARLES PATRICK MONICO and     )
ANTHONY RAYMOND BANKS,         )
                               )
        Defendants.            )
_____)

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

At all times material to this Indictment:

1

ATTACHMENT #1

Florida crew of the Gambino Crime Family, which was engaged in racketeering activity, intentionally combined, conspired, confederated, and agreed, together and with each other, and with other persons known and unknown to the grand jury, to murder Jeanette Smith, in violation of Section 782.04 Florida Statutes.

5. It was part of the conspiracy that, during the aforesaid time period, the defendants did speak with each other in order to agree upon, and plan the details concerning, the murder of Jeanette Smith, including the place, time and method of effecting her death.

All in violation of Title 18, United States Code, Section 1959(a)(5).

### COUNT 18

1. The General Allegations set forth above in paragraphs numbered one (1) through twelve (12) of this Indictment are realleged and expressly incorporated herein as if set out in full.

2. At all times material to this count of the Indictment, the association in fact enterprise, that is, the South Florida crew of the Gambino Crime Family, as more fully described in paragraph 3 of Count 1 of this Indictment, and which paragraph is realleged and incorporated by reference in this count as though set forth fully herein, constituted an enterprise as defined in

19

Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which engaged in, and the activities of which affected, interstate and foreign commerce.

3.    The above described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), consisting of acts and offenses set forth in paragraph 4 of Count 1 of this Indictment, which paragraph is realleged and incorporated by reference in this count as though set forth fully herein.

4.    On or about March 20, 1999, in the Southern District of Florida and elsewhere, the defendants,

> **FREDERICK J. MASSARO,**
> a/k/a `Freddie,"
> a/k/a `Uncle," and
> **ARIEL HERNANDEZ,**

for the purpose of gaining entrance to and maintaining and increasing their positions in the enterprise, that is, the South Florida crew of the Gambino Crime Family, which was engaged in racketeering activity, did murder Jeanette Smith, in violation of Section 782.04 Florida Statutes.

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

_____
ANTHONY TRENTACOSTA
DEFENDANT


Pre-trial Detention is recommended as to defendant.


_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY


ATTACHMENT #2

_____
FREDERICK J. MASSARO
DEFENDANT


Pre-trial Detention is recommended as to defendant.


_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

FRANCIS RUGGIERO
DEFENDANT

7. $250,000.00 corporate surety bond is recommended as to defendant.

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

ARIEL HERNANDEZ
DEFENDANT

Pre-trial Detention is recommended as to defendant.


LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

_____JULIUS BRUCE CHIUSANO_____
                    DEFENDANT


        1. $250,000.00 corporate surety bond is recommended as to
defendant.


                                    _____
                                    LAWRENCE D. LaVECCHIO
                                    ASSISTANT UNITED STATES ATTORNEY

 

 

<u>       ADAM TODD SILVERMAN       </u>
DEFENDANT


Pre-trial Detention is recommended as to defendant.




                           

<u>                           </u>
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

<u>CARLOS  GARCIA</u>
DEFENDANT

Pre-trial Detention is recommended as to defendant.

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

                    CHARLES PATRICK MONICO
                          DEFENDANT


        A $250,000.00 corporate surety bond is recommended as to
defendant.


                              LAWRENCE D. LaVECCHIO
                              ASSISTANT UNITED STATES ATTORNEY

_____ANTHONY RAYMOND BANKS_____
DEFENDANT


Pre-trial Detention is recommended as to defendant.


_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

## POINT TWO

In direct contradiction to the allegations against Mr. Trentacosta at the recent

hearing before this Honorable Court on October 25, stands the *sworn testimony of*

*Terry L. Feisthammel,* Special Agent, Federal Bureau of Investigation. This agent, on

May 20, 2000, swore unequivocally:

> ".... As a result of these two events, MASSARO had been operating
> cautiously and without assignment of a crew leader from whom
> MASSARO could seek guidance and permission to conduct criminal
> activity.  ..... MASSARO has recently been assigned to the crew
> of TRENTACOSTA..."

This sworn testimony is in May, after the murder allegation and the bulk of

any nefarious activity in the instant indictment allegedly occurred.  [attachment #3]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )      NO. 99-1-WPD
FOR AN ORDER AUTHORIZING THE      )
CONTINUED INTERCEPTION OF WIRE    )      UNDER SEAL
COMMUNICATIONS                    )
_____  )

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Terry L. Feisthammel, Special Agent, Federal Bureau of
Investigation, Miami, Florida, being duly sworn, depose and say:

1. I am a Special Agent of the Federal Bureau of
Investigation (FBI). As such, I am an "investigative or law
enforcement officer of the United States" within the meaning of
Title 18, United States Code (U.S.C.), Section 2510 (7), that is,
an officer of the United States who is empowered by law to
conduct investigations of, and to make arrests for, offenses
enumerated in Title 18, U.S.C., Section 2516.

2. I have been employed as a Special Agent of the FBI for
approximately twelve years. For the past three years, I have
been assigned primarily to investigations of organized crime,
including investigations of an organized criminal enterprise
known as the La Cosa Nostra (LCN). As a result of my

ATTACHMENT #3

trailer located in the truck parking lot at the Oasis Truck and Tire Service, 5900 South State Road 7, Hollywood, Florida. Among the items seized were televisions and stereos which were believed to be purchased with counterfeit checks. One of the items seized was a Sony Stereo in what appeared to be the original box. This box was similar to the box that murder victim, Jeanette Smith, was placed and discarded in the Everglades. The investigation has revealed that ARIEL HERNANDEZ purchased with counterfeit checks, one Sony Stereo on January 27, 1999 and two Sony Stereos on February 27, 1999, from Sharper Image. Records concerning contacts between criminal associates are not normally kept, and the best evidence of a meeting would be the conversations themselves.

70. Based on the totality of the circumstances, MASSARO and other members of the enterprise, are conducting the affairs of the enterprise through the pattern of racketeering set forth in paragraph 6. Specifically, MASSARO has provided false information concerning various aspects of the homicide investigation and has attempted to conceal aspects of the affairs of the enterprise. Accordingly, continued interception is necessary to reveal the full scope and nature of the racketeering enterprise.

71. On March 19, 1999, the first day of court authorized wire interception, it was discovered that Anthony Ruggiano, aka "Fat Andy" had died as a result of a heart attack. On March 20, 1999, the second day of court authorized wire interception, ARIEL HERNANDEZ murdered Jeannette A. Smith. Details concerning this

murder were discovered through the interception of wire communications conducted pursuant to this court's prior orders, and that evidence contributed to the March 28, 1999, arrest of HERNANDEZ by the Broward County Sheriff's Office.  As a result of these two events, MASSARO had been operating cautiously and without assignment of a crew leader from whom MASSARO could seek guidance and permission to conduct criminal activity. Without the availability of HERNANDEZ to produce counterfeit checks, MASSARO has had to change his source of income.  Within the last twenty days it appears that MASSARO has increased the number of telephone conversations in which he engages that relate to extortionate collection illegal debts.  Through the more recent interceptions, investigators are discovering the existence of more loansharking victims.  Further interceptions will assist in identifying these and other recently discussed victims, some of whom may ultimately become witnesses in this matter.  In addition, inasmuch as FALCO has indicated to CS-1 that MASSARO has recently been assigned to the crew of TRENTACOSTA, it is anticipated that MASSARO will have more contact with TRENTACOSTA as MASSARO receives instructions from TRENTACOSTA on criminal matters.

72. Due to the fact that sufficient evidence is not available through other investigative techniques, as set forth above, your affiant believes there is a need for electronic surveillance in this matter to fully reveal the manner and scope in which **FREDERICK J. MASSARO, ANTHONY TRENTACOSTA, MICHAEL J.**

52

FNU LNU A/K/A "VICTOR", FNU LNU A/K/A "DOMINIC", FNU LNU A/K/A "JOEY", FNU LNU A/K/A "DAVID", FNU LNU A/K/A "TONY", FNU LNU, A/K/A "HELEN", FNU LNU A/K/A "RJ" and others as yet unknown, participate in the illegal conduct referenced herein, the identities of the participants, co-conspirators, and victims, the precise nature and scope of the criminal enterprise and illegal activity, the individual acts committed by aiders, abettors, and co-conspirators, the extent of their participation in these offenses, their places of operation, the full nature of the criminal conspiracies involved therein, and the acquisition and disbursement of proceeds derived from criminal activity, for a period not to exceed thirty (30) days from the date of the Court's Order.

Terry L. Feisthammel, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this ___ day of May, 1999.

WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

Certified to be a true and correct copy of the original.
Carlos Juenke, Clerk
U.S District Court
Southern District of Florida

By _____ Deputy Clerk

Date 5/20/99

55

## POINT THREE

Mr. Trentacosta was aware of the pending Federal indictment and nevertheless, remained at his home in Atlanta. In fact, the arresting agents called him approximately 10 minutes prior to their officially appearing and arresting him, all without any rancor. [attachment #4]

Throughout any and all contacts Mr. Trentacosta has had with any Court, at anytime, and anywhere,  he has never failed to appear, been late, or ever had any alias capias or arrest warrant issued for his non-appearance.

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    09/26/00

ANTHONY TRENTACOSTA was arrested at his residence, 6190 Polo Club Drive, Cumming, Georgia, telephone number (770) 781-5262.  Thereafter, he was transported to the Atlanta office of the Federal Bureau of Investigation for photographing and fingerprinting.  After being advised of his rights from the Standard Advice of Rights form, TRENTACOSTA volunteered the following information while en route to the Atlanta office:

TRENTACOSTA stated that he and associates (unnamed) were aware that they would be indicted in Florida.  He received this information from "FREDDY's daughter", who is an attorney in south Florida.  TRENTACOSTA was advised of this approximately two months ago.  He commented that an associate of "FREDDY's" was arrested for murder.  The individual arrested for the murder told authorities that the death occurred as a result of rough sex, later changing the story to one which implicated TRENTACOSTA.

He further advised that he is not planning to hire a defense attorney regarding this indictment, but instead, will seek a court-appointed attorney.

TRENTACOSTA stated that he is unemployed; however, he and his wife, DENISE, have purchased two acres of land in Alpharetta, Georgia, where they are planning on building an Italian restaurant which will be known as PAVAROTI'S.

At the conclusion of photographing and fingerprinting TRENTACOSTA was transported to the U.S. Marshal's Office, Atlanta, Georgia, where he was lodged pending an initial appearance.

Investigation on    09/26/00    at   Cumming, Georgia

File #   245A-MM-84432 -954                          Date dictated    09/26/00
      SA FRANK J. GRAZIANO and
by   SA JOHN J. SIMMONS, JR.:nb

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

ATTACHMENT #4

## POINT FOUR

Mr. Trentacosta was diagnosed with larynx cancer in 1994 and has since then been undergoing treatment at *Memorial Sloan - Kettering Cancer Center*. While the initial course of treatment, including chemotherapy, has so far been successful, twice yearly appointments are mandated.

The next scheduled appointments are for November 14 [not 4], November 15 and November 16 of this year. [attachment #5]

Either partially or completely as a result of the medical intervention treating Mr. Trentacosta's cancer, moderate to severe hearing loss has occurred in his right ear. [attachment #6]

Similarly, all his teeth have been removed and 12 dental implants have been placed in their stead. The restoration is a work in progress; portions of the finished bridgework have apparently fractured and require immediate attention.[attachment#7]



*George J. Bosl, MD*
*Chairman, Department of Medicine*
*The Patrick M. Byrne Chair in Clinical Oncology*

October 30, 2000

|  |  |
|---|---|
| **RE:** | ***Anthony Trentacosta*** |
| ***MSKCC#*** | ***336867*** |
| ***D.O.B.*** | ***8/22/39*** |

Dear Judge Huck:

Mr. Trentacosta is a patient under my care. He was treated for larynx cancer in 1994 and requires follow-up twice a year to detect for any occult disease or changes in health. His appointments are as follows: 11/4 - Dr. Zelefsky, Dr. Shah, 11/15 - endocrinologist, 11/16 - Dr. Bosl, Dr. Winnower. He will require a few days observation after his procedures (colonoscopy and endoscopy) prior to going home to Atlanta. He will be staying at his father-in-law's home and can be reached at (516) 731-5161.

If any additional information is required, please do not hesitate to contact my office.

Sincerely,

George J. Bosl, MD

GB/cf

*Memorial Sloan-Kettering Cancer Center*
*1275 York Avenue, New York, New York 10021*
*Telephone 212.639.5878 · Clinical 212.639.6475*
*FAX 212.717.3550*

*NCI-designated Comprehensive Cancer Center*

ATTACHMENT #5

Name: Trentacosta, A.
MR#: 336867

Patient Identification



**Initial Consultation**
**Patient Name: Trentacosta, Anthony**
**MR#: 336867**
**Date: 9/18/98**

Anthony Trentacosta was seen for an audiological reassessment on September 15, 1998. He completed treatment for squamous cell carcinoma of the supraglottic larynx approximately 4 years ago. Mr. Trentacosta feels that the hearing has decreased further for the right ear. In addition, he is experiencing drainage from the right ear. He has not pursued a hearing aid fitting as suggested previously.

The audiogram suggests for the right ear, a moderate to severe mixed hearing loss. The left ear pure tone configuration indicates hearing within normal limits through 1,000 Hz, dropping to a moderate to severe sensori-neural hearing loss. Mr. Trentacosta achieved speech reception thresholds of 50dB and 20dB in the right and left ears respectively. At suprathreshold levels, speech discrimination scores of 80% for the right ear and 84% for the left ear were obtained. Tympanometric tracings were flat with increased volume, consistent with perforations.

The results of the audiological assessment were discussed with Mr. Trentacosta and an otologic consultation was suggested. Since he is returning to Atlanta, this will be arranged at home.

*Amy S. Budnick*

Amy S. Budnick, MEd, MPH, CCC/A
Director, Audiology
Speech, Hearing and Rehabilitation Center

cc:    Medical Records/Chart/Dr. Kraus/Dr. Shah

ATTACHMENT #6

# CUMBERLAND DENTAL ASSOCIATES, P.C.

**Joseph F. Alvarez, D.D.S.**                                      **Ronald M. Wand, D.D.S., P.C.**

EMERSON CENTER, SUITE 128
2814 SPRING ROAD
ATLANTA, GEORGIA 30339-3036
(770) 434-2181 / (770) 435-5225
FAX (770) 434-2397

10-26-00

Your Honor:

I am writing on the behalf of Tony Trentacosta.
Although the circumstances are not normal, it has come to my attention that Tony is having problems with some of the dental treatment I have done for him.

Tony has been a patient of mine for approximately 3 years and during that time we have dealt with the side effects of throat cancer, the removal of all his teeth, the placement of 12 dental implants and the making of his final restorations. We had completed his upper bridgework and were in the process of completing his lower teeth when he was detained. Since then, his wife has informed me a portion of his upper bridgework has fractured and the temporaries for his bottom implants are starting to fall apart. It is important I complete and fix these restorations in order to maintain his oral well being and overall health.

Please consider these points when deciding to release him on bond.

Sincerely,

Joseph F. Alvarez D.D.S.

ATTACHMENT #7

## POINT FIVE

As of May, 2000, the Small Business Loan application of Denise Trezza, the wife of Mr. Trentacosta, has been approved. [attachment #8]

The restaurant to be named 'Pavaroti's' is the culmination of this couple's dream. There is a tentative closing date for November 30, 2000 and while it can be extended, time is of the essence. While Denise Trezza is the prime mover is this business, her husband's help, provided directly to her is crucial for the success of the restaurant.

**Business Georgia**
The Business Developers and Corporation of Georgia, Inc.

SBA LOANS
COMMERCIAL LOANS

May 12, 2000

Denise Trezza
Pavaroti's Italian Restaurant
6190 Polo Club Drive
Cumming, Georgia 30040

Dear Mrs. Trezza:

I am pleased to inform you that the Business Development Corporation of Georgia, Inc. (the "Lender"), has approved a loan in the amount of $1,650,000 for Denise Trezza and Pavaroti's, Inc. (the "Borrower"). This loan is subject to, but not limited to, the following:

1) Approval of the U.S. Small Business Administration through the SBA 7(a) loan program.

2) The terms and conditions in the Small Business Administration Authorization and Loan Agreement.

3) The BDC's continuing satisfaction with the financial condition of the Borrower.

4) The absence of any material adverse change in the condition of the Borrower since the approval of this loan.

**General Terms and Conditions**

| | |
|---|---|
| Borrower: | Denise Trezza |
| | Pavaroti's, Inc. DBA Pavaroti's Italian Restaurant |
| Guarantors: | Same |
| Amount: | $1,650,000 |

| | |
|---|---|
| Building: | $1,070,000 |
| FFM&E: | $ 430,000 |
| Inventory: | $ 65,000 |
| Working Capital: | $ 35,000 |
| SBA Fee: | $ 25,938 |
| Closing Costs: | $ 24,062 |
| Total: | $1,650,000 |

*Affiliated with the Business Growth Corporation of Georgia*

ATTACHMENT #8

**Term:** The loan will require monthly principal and interest payments to fully amortize the loan over a twenty (20) year period.

**Rate:** The loan will have an adjustable interest rate of Wall Street Journal Prime plus 2%. The rate will adjust on the first day of each month.

**Purpose:** To provide permanent financing for land/building, equipment, inventory and working capital for a start-up restaurant in Alpharetta, Georgia.

**Secured By:** The lender shall have a 1st Deed to Secured Debt on the commercial property located at Windward Parkway and Highway 9 in Alpharetta, Georgia.                        *803 N. main st.*

The lender shall have a first priority interest in all machinery & equipment, furniture & fixtures, and inventory located at Pavaroti's, Inc. DBA Pavaroti's Italian Restaurant in Alpharetta, Georgia.

The lender shall have a 1st Deed to Secured Debt on Mrs. Trezza's rental property located at 23 Fairview Avenue in Great Neck, New York.

**Covenants:** An assignment of life insurance will be required on the life of Denise *A 400,000* Trezza in the amount of $800,000.

The BDC will require an appraisal on the commercial property located at Windward Parkway and Highway 9 in Alpharetta, Georgia and the rental property located at 23 Fairview Avenue in Great Neck, New York.

The loan will be subject to a minimum appraisal value of $1,600,000 for the commercial property in Alpharetta, Georgia and $600,000 for the rental property in Great Neck, New York.

The loan will be subject to the approval of an interim construction loan in the amount of $1,650,000.

*LAND* The BDC will require the borrower to have an equity injection of $550,000, evidenced prior to closing.

This proposal must be accepted by the close of business on May 31, 2000 and a loan closing must take place before November 30, 2000 or it becomes invalid. Please return the proposal along with the attached deposit agreement to this office.

Again, thank you and congratulations!

Sincerely,

Shawnte Johnson

Shawnte M Johnson
Vice President

ACCEPTED BY:

Pavaroti's, Inc.

By:  Denise Trezza, President          Date  5/20/00

By:  Denise Trezza, Individually          Date

SBA Loans
Commercial Loans

## Deposit Agreement

By execution of SBA Form 4 (Application for Business Loan), the Applicant consents to the processing of Applicant's loan package through the U.S. Small Business Administration 7(a) or 504 loan program. Applicant understands that concomitant with this application, Applicant must submit a deposit of $4,000.

The above-stated deposit shall be fully refundable if the SBA or Business Georgia declines the application. *However*, when the SBA Authorization is issued by SBA or SBA generates an SBA loan number pursuant to the PLP program, the deposit shall be applied by Business Georgia to the loan processing fee, reasonable and necessary costs incurred in packaging and processing the loan application and other expenses so incurred. Any remaining funds shall be returned to the Borrower.

Should the Applicant withdraw its application or fail to close its loan once approved by SBA or Business Georgia, Applicant agrees that in the event said deposit is not sufficient to cover such fees and costs, Applicant will reimburse Business Georgia for such expenses.

Furthermore, if applicant withdraws its application at any time before SBA issues the Authorization, Business Georgia may deduct its reasonable and necessary costs incurred in packaging and processing the loan application. Any remaining funds shall be returned to the Borrower.

Acknowledged and accepted this _____ day of _____ 19____.

DENISE TREZZA
Applicant's Name (Printed)

Denise Trezza
Signature of Applicant or its Authorized Representative

2255 Cumberland Parkway • Suite 1200 • Atlanta, Georgia 30339-4531 • Telephone 770-434-0273 • Facsimile 770-432-4340 • www.businessgeorgia.com

*Affiliated with the Business Growth Corporation of Georgia*

## POINT SIX

Reasonable conditions of bond can be fairly established to insure that the interests of both parties [the U.S.Attorney's office and Mr. Trentacosta] are protected. Mr. Trentacosta accepts any or all recommendations of Pre-Trial Services.:Futhermore, for this Honorable Court's consideration -

1) Electronic monitoring. [if this Court deems necessary]
2) Travel restricted to the Northern District of Georgia [greater metropolitan Atlanta area], New York City [medical], and the Southern District of Florida [legal].
3) Surrender any passport.
4) Abstain from alcohol.
5) No contact with any alleged victim or witness; furthermore the U.S. Attorney's Office instructs their witnesses as to the same.
6) Mr. Trentacosta would *agree* to any reasonable law enforcement search so as to insure his compliance with any and all bond conditions.
7} Mr. Trentacosta *agrees* to wiretapping his home phone and any cellular phone, including his wife's.
8) Mr. Trentacosta agrees not even to use any communication device except as stated above.
9) Mr. Trentacosta will remain in his home, in Atlanta, and will not leave except in his wife's continued presence. [with the exception as noted in 2) above]
10) Any other reasonable condition as this Court deems appropriate.

WHEREFORE, Mr. Trentacosta respectfully requests that this Honorable Court affirm the earlier decision of Magistrate Feldman and grant him bond pending trial in this instant case. Furthermore, since Mr. Trentacosta is indigent, if a corporate surety is required by this Court, [and in consideration of the non-refundable premium of 15% paid to the surety] a joint corporate and personal bond, with the wife, Denise Trezza, being among the personal guarantors.

### Certificate of Service

A copy of the foregoing "Submission" was hand delivered to Lawrence D. LaVecchio, or his co-counsel, this 6th day of November, 2000.

Richard K. Houlihan
300 Aragon Ave., #310
Coral Gables, Fl. 33134
(305) 442 - 1522
Rkhoulihan@aol.com
Fl.Bar# 238139