UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

01 MAR 30 PM 12:46

CASE NO. 00-6273-CR-HUCK/BROWN

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES OF AMERICA

VS.

ANTHONY TRENTACOSTA          **MOTION TO SEVER**

_____/

COMES NOW, the Defendant, Anthony Trentacosta, through undersigned counsel and moves this Court to sever his trial from that of his Co-Defendants. He would state:

1. Anthony Trentacosta is charged in only Count 1 of the instant indictment, with Racketeering Conspiracy.

2. Counts 2-16 charge fraud by Co-Defendants Massaro, Hernandez and Chiusano.

3. Count 17 charges Massaro and Hernandez with conspiracy to murder Jeanette Smith.

4. Count 18 charges that Massaro and Hernandez did murder Jeanette Smith.

5. Count 19 charges that Co-Defendants Silverman, Monica and Banks assisted Massaro and Hernandez "in order to hinder and prevent their apprehension, trial and punishment."

6. Count 20 charges Massaro and Co-Defendant Carlos Garcia with conspiracy to murder Co-Defendant Hernadez.

7. Count 21 charges Massaro, , Hernandez and Chuidano with making and uttering

1



counterfeit securities

8. Count 22 charges Massaro and Co-Defendant Ruggiero with making "extortionate extensions of credit".

9. Count 23 charge Massaro, Ruggiero, Silverman and Garcia with using "extortionate means to collect and attempt to collect extensions of credit".

10. Count 24 charges Massaro with possessing goods stolen from a interstate shipment of property.

11. Count 25 charges Massaro with possessing of firearms in and affecting commerce."

12. Counts 24 and 25 are not even alleged to be a part of any "Racketeering Conspiracy." Trial of these Counts should be Severed from any trial on the other Counts. This is particularly true as trial of these counts will necessarily invoke parading firearms and a silencer in front of the jury. These items of violence, not connected to or alleged to be connected to Mr. Trentacosta, should not be introduced in any trial involving Mr. Trentacosta.

13. The Government has acknowledged (P. 2 of indictment) that Anthony Ruggiano was responsible for the "day to day control of a crew of the Gambino crime family which conducted its affairs primarily within the Southern District of Florida."

Anthony Ruggiano died on March 19, 1999.

14. Mr. Trentacosta's charge in Count 1 is based solely on the speculation that he assumed Anthony Ruggiano's place as "control of the crew" after Anthony Ruggiano died. There is absolutely no evidence of Mr. Trentacosta's "assumption of control".

15. Counts 2 - 13 of the instant indictment alleged fraudulent acts occurring before

March 19, 1999, before Mr. Trentacosta was alleged by the Government to have anything to do with "running the crew." These counts should be severed from any trial involving Mr. Trentacosta.

16. Count 17, and 18 allege that in March 19, 1999, Massaro and Hernadez, first conspired to murder, then murdered Jeanette Smith.

There is no allegation in either count that Mr. Trentacosta knew of the alleged conspiracy, acquiesced to it, or aided it in any way.

It would be irreversibly prejudicial to join Mr. Trentacosta's trial with a trial on these serious, violent charges.

17. Mr. Trentacosta is not alleged to have known about or participated in Counts 19-25.

His trial should be severed from a trial as to these counts.

18. Additionally, counsel has been notified that some Co-Defendants have confessed. Mr. Trentacosta did not confess. His trial must be Severed from the trial of those Co-Defendants who did confess. He submits that the alleged confessions cannot be sufficiently redacted to remove him from the jury's consideration when these alleged confessions are introduced into evidence.

19. In its May 20th, 1999 wiretap application, the prosecution, under oath, stated:

> On March 19th, 1999, the first day of court authorized wire interception, it was discovered that Anthony Ruggiano, a/k/a "Fat Andy" had died as a result of a heart attack. On March 20th, 1999, the second day of court authorized wire interception, Ariel Hernandez murdered Jeannette A. Smith.

(P. 51 of Affidavit).

And,

3

> As a result of these two events, Massaro had been operating cautiously and without assignment of a crew leader from whom Massaro could seek guidance and permission to conduct criminal activity. Without the availability of Hernandez to produce counterfeit checks, Massaro has had to change his source of income. Within the last twenty days it appears that Massaro has increased the number of telephone conversations in which he engages that relate to extortionate collection (of) illegal debts. Through the more recent interceptions, investigators are discovering the existence of more loan sharking victims.
>
> (P. 52 of Affidavit).

And,

> In addition, inasmuch as Falco has indicated to CS-1 that Massaro has recently been assigned to the crew of Trentacosta, it is anticipated that Massaro will have more contact with Trentacosta as Massaro receives instructions from Trentacosta on criminal matters.
> (P. 52 of Affidavit).

Thus for a period since the death of "Fat Andy" (March 19th, 1999) up to May, 1999, Massaro had been operating without a "crew leader" (allegedly Trentacosta).

Mr. Trentacosta's alleged activity/action is that he "assumed responsibility for the day to day control of the aforesaid crew of the Gambino crime family which had previously been controlled by Anthony Ruggiano" (P. 3 of indictment).

After "Fat Andy's" death, and Jeanette Smith's murder, Massaro "had been operating cautiously and without assignment of a crew leader from whom Massaro could seek guidance and permission to conduct criminal activity" (P. 52 of May 20th, 1999 Affidavit), and Massaro has recently been assigned to the crew of Trentacosta" (P. 52 of May 20th, 1999 Affidavit).

In accordance with the sworn assertions in the May 20th, 1999 Affidavit, Mr. Trehtacosta should not be tried along with the trial counts 2 - 16, 17, 18, 19, 20 and 21 as

these alleged crimes happened before Mr. Trentacosta allegedly assumed responsibility for the day to day control of the aforesaid crew".

20. In count 18 of the indictment, Co-Defendants are charged with a Capital Offense, in which Mr. Trentacosta was not alleged to have been involved.

It will be irreversibly prejudicial for Mr. Trentacosta to go to trial jointly with those Capital Murder Defendants.

## ARGUMENT

In the case of *United States v. Haworth*, 168 F.R.D. 658 (D.N.M. 1996), Co-Defendants sought to be tried separately from 2 Co-Defendants who were "charged with crimes subject to the death penalty". The Court granted a Severance of some Defendants finding "severance will both reduce the risk of prejudice to Defendants and facilitate judicial economy". In so finding, the Court stated:

> It thus appears that there will be far more evidence of considerably more violent activity to present against Haworth, Spiney and Gomez than there will be to present against the Gregory Defendants
> A joint trial will more likely result in prejudice to the Gregory Defendants, who are charge only with drug crimes, given the volume of evidence presented on the violent crime charge against Haworth, Spiney and Gomez. It is questionable whether a jury would be able realistically to compartmentalize the disparate evidence with respect to each defendant.
> (P. 659)

And,

> Moreover, given the disparity in evidence, it is clear that in a joint trial of all Defendants, the Gregory Defendants will be compelled to sit through a great deal of testimony having only minimal, if any, relevance to them.
> (P. 660).

The reasoning in *Haworth* applies in this case. Mr. Trentacosta's case must be severed from the other Defendants, particularly the murder Defendants.

In *United States v. Paul*, 150 F.R.D. 696 (S.D. Fla. 1993), a severance was Granted as the Court found an inordinate number of limiting instructions would be required "regarding the purposes for which particular evidence is sought to be introduced".

All the problems inherent in *Paul* are present in the instant case and a severance should be granted.

In *United States v. Baker*, 98 F. 3rd 330 (8th Cir. 1996), the Court found that a Severance should have been granted because:

> Evidence that the jury should not have considered against Baker and that would not have been admissible if Baker had been tried alone was admitted against Wheeler, Baker's co-Defendant. Most of the evidence was properly admissible only against Wheeler.
> (P.335).

Most of the evidence at a joint trial would be <u>inadmissible</u> as to Mr. Trentacosta. *Baker* requires severance.

In *United States v. Pedrick*, 181 F 3rd 1264 (11th Cir. 1999), the Court held that a severance was proper where "the evidence against Pedrick was minimal and not like the overwhelming and vivid evidence against Shankman" (P.1271).

6

In this case, the evidence against Mr. Trentacosta is minimal and not like the character and quantity of the evidence against the Co-Defendants.

In *United States v. Rollack*, 64 F. Supp. 2nd 255 (S.D.N.Y. 1999), the Court found that a severance was Required where that Government sought the Death Penalty against one Defendant:

> But in this case, although there is overlap of some of the charges against Rollack and the charges against his Co-Defendant, there are also many seroius crimes that are charged only against Rollack. In a single trial one death qualified jury would be required to consider all of the conduct charged, including murders in which the non-capital Defendants were not involved.
>
> In light of these circumstances, fundamental fairness requires severance. In this case, the efficiency and economy of a single trial are outweighed by the danger of unfair prejudice to Rollack's Co-Defendants.
> (P. 257).

And,

> Fundamental fairness requires that Andino not be tried by a death qualified jury at a trial of Rollack for 21 crimes with which Andino is not charged.
> (P. 257)

Similarly, in this case, Mr. Trentacosta must not be tried with his Co-Defendants, particularly the capital murder Co-Defendants.

In the case of *United States v. Gomez*, 111 F. Supp. 2nd 571 (E. D. Pa. 2000), Severance was Granted as the Court stated:

> With respect to the issue of prejudice, it would be manifestly unfair if a fact finder were to impute criminal liability against Mr. Gomez based on illegal actions

7

> committed pursuant to conspiracies with which Mr. Gomez himself was not charged.
>
> (P. 574)

And,

> The structure of the Government's case, combined with the seriousness of the conspiracy that has not been charged against Mr. Gomez, increases both the likelihood and the impact of guilt's being transferred to Mr. Gomez from his Co-Defendants, such that severance seems appropiate under Rule 14.
>
> (P. 574-5)

And,

> Thus, is not evident that all potentially incriminating evidence that might be brought against Mr. Martinez - Acosta in a joint trial could also be brought against Mr. Gomez if he were tried separately. Since there appears to be some non-negligible, though as yet unquantified, risk that, if Mr. Gomez were tried jointly with his Co-Defendants, evidence of a particularly grave nature not properly admissible against him would "spill over" and unfairly prejudice Mr. Gomez's defense, Rule 14 severance seems warranted.
>
> (P. 575).

Here. Likewise, Mr. Treantacosta's trial must be severed from his that of his Co-Defendants to avoid undue and irreversible prejudice. See also, *United States v. Carrasco*, 968 F. Supp. 948 (S.D.N.Y. 1997).

Mr. Trentacosta would respectfully adopt all arguments and authorities cited by his Co-Defendants as to why severance of both counts and Co-Defendants is warranted in this case.

In view of the foregoing facts, arguments, and authorities, Mr. Trentacosta submits that his trial on count 1 (the only count in which he is charged) must be Severed from the trial of his Co-Defendants on the remaining 24 counts.

WHEREFORE, the Defendant Anthony Trentacosta, prays that this Motion to

Server be Granted.

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was furnished by mail to Larry Del Vecchio, Assistant United States Attorney at 500 East Broward Blvd. 7th Floor, Ft. Lauderdale, Florida 33394, on this 30 day of March 2001.

Respectfully submitted,

THE LAW OFFICES OF
RICHARD K. HOULIHAN
Attorney for Trentacosta
300 Aragon Avenue, Suite 310
Coral Gables, Florida 33134
Tel: (305) 442-1522

**Richard K. Houlihan, Esquire**
Florida Bar No. 238139

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed/delivered this **30** day of **March**, 20**01** to: UNITED STATES ATTORNEY'S OFFICE, LARRY LaVECCIO, 500 East Broward Blvd., Suite 700, Fort Lauderdale, Fl. 33394; and to:

Jeffrey Weinkle, Esq.
1035 NW 11th Ave
Miami, Fl. 33136
(Attorney for Hernandez)

Fred Haddad, Esq.
101 NE Third Avenue
Suite 202
Ft. Lauderdale, FL 33301
(Attorney for Massaro)

Samuel D. Deluca, Esq.
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307
(Attorney for Ruggiero)

Donald Spadero, Esq.
1000 S. Federal Highway
Suite 103
Ft. Lauderdale, FL 33316
(Attorney for Chiusano)

Michael Smith, Esq.
633 SE 3rd Avenue
Suite 4F
Ft. Lauderdale, Fl
(Attorney for Silverman)

Alejandro Taquechel, Esq.
Suite 238
3750 W. 16th Avenue
Hialeah, FL 33012
(Attorney for Carlos Garcia)

Thomas Almon, Esq.
321 NE 26th Street
Miami, FL 33137
(Attorney for Monico)

Manuel Gonzalez, Esq.
782 NW Le Jeune Road
Suite 440
Miami, FL 33126
(Attorney for Banks)

Richard K. Houlihan, P.A.
300 Aragon Ave., #310
Coral Gables, Fl. 33134
Tel: 305-442-1522
Rkhoulihan@aol.com