UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. 00-6273-CR-HUCK/BROWN

UNITED STATES OF AMERICA,                    :

             PLAINTIFF,                    :

v.                                                                     :

ANTHONY TRENTACOSTA, et al.,               :

             DEFENDANTS.               :

_____

### GOVERNMENT'S RESPONSE TO DEFENDANTS TRENTACOSTA'S, HERNANDEZ' AND MASSARO'S MOTIONS TO SUPPRESS WIRETAP EVIDENCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response in opposition to defendants Anthony Trentacosta's, Ariel Hernandez' and Frederick J. Massaro's motions to suppress wiretap evidence.[1]

### THE MOTIONS

The defendants Massaro, Trentacosta and Hernandez have each filed motions seeking the suppression of evidence obtained through the interception of wire communications authorized by

_____

[1] The instant Response addresses those issues raised in the following motions which are before the Court: Motion by Anthony Trentacosta to Suppress Wiretap Evidence (DE 228); Motion by Ariel Hernandez to Suppress Intercepted Wire Communications (DE 231); Motion by Frederick J. Massaro to Suppress Evidence Derived From Illegal Electronic Surveillance in State Proceeding, Request for Evidentiary Hearing and Incorporated Memorandum of Law (DE 159); and Initial Motion by Frederick J. Massaro to Quash Search Warrants and Suppress Evidence, Wire Tap Derivative, With Authority (DE 157).

1

The Honorable William P. Dimitrouleas during 1999.[2] The defendant Massaro alleges that the initial

wiretap application was deficient in setting forth sufficient grounds for the issuing judge to have

found that normal investigative procedures had been tried and had failed, or reasonably appeared to

be unlikely to succeed if tried or to be too dangerous, in accordance with Title 18, United States

Code, Section 2518(3)(c). The defendant Trentacosta argues that the interception of certain

conversations which occurred between him and his wife, Denise Trezza, were not of evidentiary

value and therefore violated the court's directive that the interception "shall be conducted in such

a way as to minimize the interception of communications not otherwise subject to interception," in

accordance with Title 18, United States Code, Section 2518(5). Defendant Hernandez maintains that

the copies of intercepted conversations which were supplied to him in discovery are not true and

accurate copies, that the government cannot meet its burden of authenticity as to those conversations,

and that the documents which he has been supplied indicate that conversations were intercepted

outside the period of time during which interceptions were authorized pursuant to the court orders.[3]

Lastly, defendant Massaro asserts that, because applications for search warrants were based, in large

---

[2]On March 18, 1999, Judge Dimitrouleas entered an order authorizing the interception of wire communications occurring on cellular telephone numbers (954) 224-7513 and (954) 224-7512, both subscribed to Father & Son Moving and Storage; telephone number (954) 456-3020, subscribed to Frederick J. Massaro; and telephone number (305) 944-2929, subscribed to Beachside Mario's restaurant. On April 20, 1999, Judge Dimitrouleas signed an order authorizing the continued interception of wire communications occurring on those four telephone lines. On May 20, 1999, Judge Dimitrouleas signed an order authorizing the continued interception of wire communications occurring on telephone numbers (954) 224-7512, (954) 456-3020 and (305) 944-2929. Each order authorized the interception of communications for a period of thirty days.

[3]In his Motion, the defendant Hernandez adopts, incorporates and reasserts the grounds set forth in his Motion To Strike Government's Discovery Response For Failure To Provide True and Accurate Copies of Intercepted Wire Communications and To Order Production of "Line Sheets" (DE 221). The government has filed a response to that Motion (DE 264).

part, on the probable cause established through intercepted communications, the fruits of those searches must be suppressed if the wiretap orders are ruled to be invalid.[4] These issues are addressed below.

## ARGUMENT

I.  Judge Dimitrouleas properly exercised his considerable discretion in determining that the wiretap application contained the requisite showing of necessity.

Defendant Massaro asserts that the initial wiretaps authorized herein were unnecessary as an investigative tool because, prior to submission of the application to Judge Dimitrouleas,  the government had amassed a great deal of information concerning the criminal activities of the Gambino Family crew which is the subject of the instant indictment.  While it is true that, prior to the application being submitted to Judge Dimitrouleas, a great deal of investigative work had been conducted, there existed insufficient evidence to convict all those persons against  whom probable cause had been established to believe were engaging in criminal activity, and to convict all those persons for all of the various violations which were being committed. [5]  Moreover, the Affidavit in

_____

[4]On August 23, 1999, The Honorable Lurana S. Snow signed warrants authorizing the search of the person of Frederick J. Massaro, his vehicle, and the following premises: Massaro's residence, the business premises of Check Cashing Unlimited II in Wilton Manors, the residence of Richard Gazie, and the residence of Michael J. Falco.  Those warrants were executed on     .

[5]Parenthetically, several persons against whom probable cause had been established remain, to date, unindicted, notwithstanding the interception of conversations in which they were apparently discussing criminal activity. Judge Dimitrouleas' initial order, entered on March 18, 1999, found, at page 1, paragraph 1, that there was probable cause to believe that Frederick J. Massaro, Anthony Ruggiano, Anthony Trentacosta, Michael J. Falco, Martin Siskind, Ariel A. Hernandez, John Patrick Rogan, Julius Bruce Chiusano, Irving Harold Weiss, Chester Potash, Richard David Gazie, John Mirabile, Anthony Esperti, Joseph Spitaleri and others unknown were involved in various criminal offenses, including RICO conspiracy, mail and wire fraud, extortionate credit transactions, and narcotics offenses.  To date, criminal charges have not been brought against Falco, Siskind, Rogan, Weiss, Potash, Gazie, Mirabile, or Esperti.  Anthony Ruggiano is deceased.  Moreover, in the renewal orders entered on April 20, 1999 and May 20,

3

support of the government's application set forth sufficient grounds to believe that other unknown persons were engaging in criminal activity with the persons named within the application.[6]

Title 18, United States Code, Section 2518(1)(c) requires that each application for an order authorizing the interception of wire communications contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. This provision does not require that "the application provide a 'comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.'" United States v. Nixon, 918 F.2d 895, 901 (11th Cir 1990). The standard has been clearly established throughout the federal courts that what is required is information about particular facts of the case at hand which would indicate that wiretaps are not being "routinely employed as the initial step in criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974). See also, United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977) (government not required to prove that every conceivable method has been tried and failed, or that all avenues of investigation have been exhausted); United States v. Clerkley, 556 F.2d 709, 715 (4th Cir. 1977) (government not required to "exhaust every conceivable technique before making application for a wiretap," and therefore electronic surveillance need not be used only as a last resort).

_____

1999, Judge Dimitrouleas entered findings of probable cause that numerous other individuals were engaged in criminal activity, many of whom were identified only by first name, and most of whom have yet to be indicted.

[6]Simultaneously herewith, the government is filing with this Court, under separate cover, copies of Judge Dimitrouleas' orders described above in footnote 2, along with their accompanying applications and affidavits. These documents are being supplied for this Court's review in conjunction with the instant response.

4

In making its determination under Title 18, United States Code, Section 2518(3)(c), the issuing judge considers the entire application, not just those paragraphs discussing need. United States v. Landmesser, supra., 553 F.2d at 20-21. Considerable discretion rests with the issuing judge in deciding whether other investigative methods might have been successfully employed. Id. See also, United States v. Daly, 535 F.2d 434 (8th Cir. 1976); United States v. Smith, 519 F.2d 516 (9th Cir. 1975). As such, this Court's review is limited to determining whether the facts set forth in the government's application are minimally adequate to support the findings made by the issuing judge. United States v. O'Malley, 764 F.2d 38, 43 (1st Cir. 1985).

Here, the detailed, specific information in the initial affidavit more than established the requisite showing of necessity for the wiretap order. Agent Feisthammel, the affiant, set forth an extensive discussion regarding the use of other investigative techniques, including confidential sources, cooperating witnesses, physical surveillance, the grand jury process, witness interviews, telephone record analysis and search warrants. Affidavit in Support of Application, March 18, 1999, pp. 53-59. In the face of this detailed discussion, defendant Massaro simply argues that the wiretap was unnecessary, and that "[t]he government had all the facts necessary to proceed; it also had an unusual amount of information and resources available ..." Massaro's Motion, p. 15.[7] In so asserting,

---

[7]The government disputes this claim. In United States v. Nixon, supra., the government applied for and received permission to place a wiretap on a telephone to gather more information in a narcotics investigation. As in the instant case, the defendant in Nixon later argued that the government had already gathered enough evidence by less intrusive investigative techniques, and that this evidence was sufficient to prosecute and convict those involved in the narcotics conspiracy. The Eleventh Circuit stated, "What amount of evidence will be sufficient to obtain a conviction is an imprecise concept." Id., 918 F.2d at 901. After reviewing the record, the court could not find that the issuing judge erred in his conclusion that the alternative techniques "neither had succeeded, nor would succeed, in providing enough evidence to prove the conspirators' guilt beyond a reasonable doubt." Id. The court affirmed the district court's denial of the defendant's motion to suppress the wiretap evidence.

5

the defendant patently ignores the objectives of the investigation, as set forth in Judge Dimitrouleas'

order of March 18, 1999, at pp. 4-5:

> [To] reveal fully the manner in which the above-named persons and
> others as yet unknown are committing the offenses described herein,
> and which reveal the full identities of the participants, co-conspirators
> and victims, the precise nature and scope of the enterprise and illegal
> activity, the individual acts committed by aiders, abettors and co-
> conspirators, the extent of their participation in these offenses, their
> places of operation, the locations where physical evidence is being
> stored, the locations and persons to which proceeds derived from
> criminal activity is transmitted, and the full scope and nature of the
> conspiracies involved therein ...

In the renewal applications presented to Judge Dimitrouleas on April 20, 1999 and May 20, 1999,

it was established that, through the use of the initial wire interceptions, other persons with whom the

initial targets were engaged in criminal activity were identified, and the known scope of their

criminal activity was expanded.[8] However, Judge Dimitrouleas reasonably found, in authorizing the

continued interception of wire communications, that, notwithstanding the initial interception of wire

communications, the goals of the government's investigation still had not been met, and that the

further use of electronic surveillance was warranted. Therefore, it is clear that, based upon the facts

set forth in the initial application, Judge Dimitrouleas reasonably exercised his discretion in

authorizing the initial wiretap and the later extension orders.

II. The government reasonably minimized the interception of communications.

Defendant Trentacosta asserts, as a ground for suppression, that some unstated number of

conversations between the defendant and his wife were intercepted which "do not appear to have

---

[8]In the renewal orders, Judge Dimitrouleas entered findings of probable cause that other
named and unnamed persons, in addition to those persons named in the initial order, were also
engaged in the crimes of murder, obstruction of justice and gambling offenses, in addition to
those offenses identified in the initial order.

been minimized." Trentacosta's Motion, p.1, paragraph 2. This challenge to the government's minimization procedure is baseless.

Title 18, United States Code, Section 2518(5) provides that "[e]very order ... shall contain a provision that the authorization to intercept ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception ..." In Scott v. United States, 436 U.S. 128, 130 (1978), the Court addressed this provision. In Scott, government agents, during the conduct of a court-authorized wiretap of a telephone, intercepted all of the conversations that occurred over the telephone. Id., 436 U.S. at 130-31. The only time the agents took any steps to minimize the conversations being intercepted was when the agents discovered that the wiretap had inadvertently been connected to an incorrect telephone line. Id., 436 U.S. at 134 n.7. In affirming the decision of the court of appeals upholding the wiretap, the Court noted that 18 U.S.C. Section 2518(5)

> does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

Id., 436 U.S. at 140. The court "must make an objective assessment of the monitoring agents' actions in light of the facts and circumstances confronting them at the time." United States v. Moody, 977 F.2d 1425, 1433 (11th Cir. 1992). Perfection in minimizing extraneous interceptions "is usually not attainable, and is certainly not legally required." United States v. Uribe, 890 F.2d 554, 557 (1st Cir. 1989). Moreover, as the Court instructed in Scott,

> In determining whether the agents properly minimized, it is also important to consider the circumstances of the wiretap. For example,

7

> when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that many more of the conversations will be permissibly interceptible because they will involve one or more of the co-conspirators.

Id., 436 U.S. at 140.

In the case at bar, the agents were investigating a crew of the Gambino Crime Family, a criminal organization which is national in scope. The initial wiretap application established that Frederick J. Massaro was an associate of the Gambino Family who was sharing the proceeds from his illicit activities with Anthony Trentacosta, a Gambino Family soldier. Trentacosta has no known assets in his own name, however significant assets are held in the name of his wife, Denise Trezza. Moreover, two cellular telephones for which interception was authorized were subscribed to Father & Son Moving and Storage of Jacksonville, Florida, a business in which Massaro is a one-half owner. Father & Son of Jacksonville pays a monthly "consulting fee" to Denise Trezza. Thus, in light of the widespread nature of the conspiracy, and consistent with Judge Dimitrouleas' stated objectives of the wiretap order (which included the acquisition of evidence establishing "the identities of the participants" and "the locations and persons to which proceeds derived from criminal activity is transmitted"), it was objectively reasonable for the monitoring agents to listen to the conversations of Denise Trezza.

The burden of production and persuasion that the government failed to properly minimize the interceptions is upon defendant Trentacosta, who is the person seeking to suppress the wiretap evidence. See, United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988). Defendant Trentacosta is not entitled to a hearing on the minimization issue because he has failed to present a sufficient

8

showing that a substantial violation of the minimization requirement occurred in this case. "In the absence of any evidence that a substantial number of nonpertinent conversations had been intercepted unreasonably, the court was justified in denying appellants' suppression motion without holding a full adversary-type hearing." United States v. Cirillo, 499 F.2d 872, 881 (2d Cir. 1974). See also, United States v. Giacalone, supra., 853 F.2d at 482-83 (no hearing required where defendants' allegations failed to show a prima facie pattern of insufficient minimization over the period of the interceptions, and most of defendants' examples of insufficient minimization were proper "spot check" monitoring by the agents). Certainly the defendant Trentacosta's bare assertion that there were an unstated number of conversations between the defendant and his wife "which do not appear to have been minimized" does not suffice. In fact, the minimization procedures utilized in this case were adequate, and the defendant has offered nothing in his motion to suggest otherwise or to meet his burden of establishing a prima facie pattern of insufficient minimization over the period of the interceptions.[9]

III. The copies of intercepted conversations which have been provided in discovery are authentic.

The defendant Hernandez has adopted and reasserted as a ground for suppression the arguments which he advanced in his Motion to Strike Government's Discovery Response For Failure To Provide True and Accurate Copies of Intercepted Wire Communications etc. (DE 221), asserting

---

[9]To the extent that the defendant asserts that some of these conversations should be "suppressed" on the grounds of marital privilege, the government notes that nothing in the wiretap statute restricts interception of marital communications that otherwise comply with the statutory requirements. United States v. Malekzadeh, 855 F.2d 1492 (11th Cir. 1988). To the extent that the defendant objects to the introduction of such conversations at trial, his motion is premature. If the government at trial offers any such conversations, the court will either admit or deny them under Rule 501, Fed.R.Evid., depending upon the other evidence admitted at trial which would establish whether Ms. Trezza was a co-conspirator and, therefore, whether such conversations fit within the crime-fraud exception.

9

that the government will be unable to establish the authenticity of the intercepted conversations. His argument is based upon the mistaken premise that the dates contained within the digital wave files are the dates upon which certain conversations were intercepted. As set forth in the government's Response to that Motion (DE 264), the additional discovery provided by the government lays to rest any such assertions that the disks containing the intercepted conversations are not authentic or that conversations were intercepted outside the period of time for which such interceptions were authorized. Moreover, the grounds asserted by the defendant as cause for suppression are inadequate. Title 18, United States Code, Section 2518(10)(a) sets forth the grounds upon which an aggrieved person may move for suppression of wiretap evidence: (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval. In the instant case, the defendant has moved for "suppression" based upon Rule 901(a), Fed.R.Evid., asserting at page 2 of his Motion, "[I]t is this rule that the defendant relies upon." Insofar as this is not a statutorily permitted ground for a motion seeking suppression, the government submits that the defendant's Motion should summarily be denied.

IV. No sufficient grounds have been asserted to warrant suppression of physical evidence.

The defendant Massaro has asserted, as his sole ground for the suppression of physical evidence seized pursuant to search warrants in this case, the alleged illegality of the wiretap orders which resulted in the acquisition of evidence upon which the search warrants were based in substantial part. Given that the wiretap orders were legally sufficient and lawfully executed, as set forth hereinabove, the government submits that the Defendant Massaro's Motion in this regard should also be summarily denied.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny the defendants' motions to suppress the electronic surveillance conducted herein in all respects. The government further submits that the motions fail to present arguments which would require an evidentiary hearing.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____

LAWRENCE D. LaVECCHIO
Assistant U.S. Attorney
Fla. Bar No. 0305405
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, Florida 33394
(954) 356-7255/(954) 356-7230 - fax

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. mail to the following on this _8th_ day of _June_ 2001.

Richard K. Houlihan, Esq. **(for Anthony Trentacosta)**
300 Aragon Avenue, Ste. 310
Coral Gables, Florida 33134

Fred Haddad, Esq. **(for Frederick J. Massaro)**
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Samuel D. DeLuca, Esq. **(for Francis Ruggiero)**
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esquire **(for Ariel Hernandez)**
1035 NW 11th Avenue
Miami, Florida 33136

Donald Spadaro, Esquire **(for Julius B. Chiusano)**
1000 S. Federal Highway, Suite 103
Fort Lauderdale, Florida 33316

Michael G. Smith, Esquire **(for Adam Todd Silverman)**
633 SE 3rd Avenue, Suite 4F
Fort Lauderdale, Florida 33301

Albert Z. Levin, Esquire **(for Carlos Garcia)**
888 Brickell Avenue, Sixth Floor
Miami, Florida 33131

Thomas Almon **(for Charles P. Monico)**
321 NE 26th Street
Miami, Florida 33137

Manuel Gonzalez, Esquire **(for Anthony R. Banks)**
782 NW Le Jeune Road, Suite 440
Miami, Florida 33126

William D. Matthewman, Esq. **(for Ariel Hernandez)**
2300 Glades Rd., Suite 340 - West Tower
Boca Raton, Florida 33431

Christopher A. Grillo, Esq. **(for Frederick J. Massaro)**
1 East Broward Blvd., #700
Ft. Lauderdale, Florida 33301

LAWRENCE D. LaVECCHIO
Assistant United States Attorney

12