UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6273-CR-HUCK/BROWN

UNITED STATES OF AMERICA,          :

            PLAINTIFF,               :

v.                                   :

ANTHONY TRENTACOSTA, et. al.,       :

            DEFENDANTS.              :

_____

GOVERNMENT'S RESPONSE TO DEFENDANTS TRENTACOSTA'S
AND HERNANDEZ' MOTIONS FOR BRADY MATERIAL

        The United States of America, by and through the undersigned Assistant United States

Attorney, hereby files its response to defendants Anthony Trentacosta's and Ariel Hernandez'

motions for Brady material.[1]

        In what appear to be somewhat "stock" motions, defendant Massaro has requested that the

government produce a wide variety of materials which he categorically characterizes as exculpatory

under Brady v. Maryland, 373 U.S. 83 (1963).  The government is fully aware of its discovery

_____

        [1]The instant Response addresses those issues raised in the following motions which are
before the Court: Request by Ariel Hernandez For Specific Brady Material and Memorandum of
Law and For Imediate Disclosure (DE 191); Request by Frederick J. Massaro For Specific Brady
Material and Memorandum of Law and For Immediate Disclosure; Potential Death Case (DE
156); and Motion For Accerated Disclosure of Brady, Jenks [SIC], Kyle, Agurs Related
Materials (DE 164).

1

obligations under <u>Brady</u> and its progeny. Thus, to the extent that the defendant merely requests that the government comply with its <u>Brady</u> obligations, such a request is unexceptional. Indeed, since the government's <u>Brady</u> obligations are, in a sense, self-executing (i.e., they exist for the government whether or not a defendant makes a formal demand for <u>Brady</u> material), defendant Massaro's motions for <u>Brady</u> material, to the extent that they are limited only to such material, are unnecessary and should be denied as moot. Furthermore, the government has since complied with many of the defendant Massaro's requests for information, and will continue to provide such information to which the defendants are entitled as such information is brought to the attention of the undersigned.[2]

Of course, while Massaro's and Hernandez' motions purport to request only that the government provide those materials it must produce under <u>Brady</u> and its progeny, the motions go on to catalogue a vast array of materials to which the defendants claim they are entitled under <u>Brady</u> but to which, in fact, they are not entitled. "Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." <u>United States v. Beasley</u>, 576 F.2d 626, 630 (5th Cir. 1978). Moreover, the <u>Brady</u> decision does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure. Rather, <u>Brady</u> only requires disclosure of "material" exculpatory evidence "to assure that the defendant will not be denied access to such evidence known only to the government." <u>United States v. Burger</u>, 773 F.Supp. 1419, 1426 (D.Kan. 1991). As the court noted in <u>Burger</u>, the government is not obligated to provide defendants with unlimited discovery of everything it knows, and the Constitution does not demand that the government disclose

_____

[2]Attached hereto is a transmittal letter dated June 14, 2001 detailing documents and information which have been provided to the defendants herein. These disclosures supplement whatever exculpatory information is contained within the vast amount of tape recorded evidence and documentary evidence which the government has made available to the defendants in discovery.

or allow complete discovery of everything that might influence a jury. <u>United States v. Agurs</u>, 427

U.S. 97, 109 (1976). Rather, the government is only required to disclose information to the defense

that meets the appropriate standard of materiality. See, <u>Felker v. Thomas</u>, 52 F.3d 907, 910 (11th

Cir. 1995) (the defendants are not entitled under <u>Brady</u> to information that is immaterial to their

prosecution) .[3] This required showing of materiality is not satisfied by mere conclusory allegations,

and the burden of proving the materiality of the requested information is always on the defendant.

<u>Burger</u>, <u>supra.</u>, citing <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>United States v. Cadet</u>, 727

F.2d 1453, 1467 (9th Cir. 1984); <u>United States v. Barnett</u>, 587 F.2d 252, 258 (5th Cir. 1979). In this

context, "[m]ateriality means more than that the evidence in question bears some abstract logical

relationship to the issues in the case .. There must be some indication that the pretrial disclosure of

the disputed evidence would have enabled the defendant significantly to alter the quantum of proof

in his favor." <u>United States v. Ross</u>, 511 F.2d 757, 762-63 (5th Cir. 1975). Evidence is not deemed

material merely because the government may be able to use it to rebut a defense position or because

it would have dissuaded the defendant from proffering easily impeached testimony. <u>United States</u>

<u>v. Stevens</u>, 985 F.2d 1175, 1180 (2d Cir. 1993).[4] Defendants are also not entitled under <u>Brady</u> to

information that their attorneys know or that is available to them from outside sources or through

---

[3]This includes cumulative impeachment information, and information that is not directly exculpatory (even if the defense is nonetheless interested in the information. See, <u>United States v. Mejia</u>, 82 F.3d 1032, 1036 (11th Cir. 1996); <u>Mills v. Singletary</u>, 63 F.3d 999, 1015 (11th Cir. 1995).

[4]In their motions, the defendants have failed to make any showing of materiality in support of their requests. Furthermore, to the extent that the defendant Massaro, in support of his Request, relies upon this being a potential death penalty case, the government notes that, after the instant motions were filed, the government advised the Court and the defendants that the death penalty will not be sought against any defendant in the instant case (DE 258).

the exercise of reasonable diligence.  See, <u>Mills v. Singletary</u>, 63 F.3d 999, 1016, 1019 (11th Cir.

1995); <u>Felker v. Thomas</u>, <u>supra.</u>, 52 F.3d at 910; <u>Weeks v. Jones</u>, 26 F.3d 1030, 1047 (11th Cir.

1994); <u>United States v. White</u>, 970 F.2d 328, 337 (7th Cir. 1992).  Finally, defendants are not entitled

under <u>Brady</u> to information that is neutral or incriminating, which includes information consistent

with the government's theory of prosecution, or generally consistent statements by witnesses that

incriminate or are neutral as to a defendant.  <u>Stafford v. Ward</u>, 59 F.3d 1025, 1027-28 (10th Cir.

1995); <u>United States v. McGuire</u>, 45 F.3d 1177, 1185 (8th Cir. 1995).

Applying these basic principles to the defendants' requests for "Brady" material reveals how

over broad these requests are.  For example, in the guise of making a request for <u>Brady</u> material,

defendant Massaro, at page 4 of his Request (DE 156), asks this Court to require the government to

produce "[t]he name and current whereabouts of any eyewitness to the underlying events of this case

whom the government does not anticipate calling as a witness at trial," regardless of why the

government does not intend to call such a witness and regardless of whether that witness possesses

any exculpatory information.  Similarly, the defendant Hernandez, at page 1 of his request (DE 191),

asks this Court to require the government to disclose "[t]he existence and identity of any experts the

Government has consulted but does not intend to use," regardless, again, of whether any such

witness possesses exculpatory information.  Additionally, the defendant Hernandez seeks, at page

2 of his Request, "any information as to the relationship between Ariel Hernandez and Jeanette

Smith, including: a. How they met; b. The length of the relationship; and c. The nature of the

relationship," when clearly such information is already particularly within the defendant's

4

knowledge.[5]  Such efforts by the defendants to expand the scope of Brady are unfounded and

represent the defendants' desire to conduct a fishing expedition through the government's files.  This

Court should not sanction the defendants' efforts and should deny the defendants' motions to the

extent that they seek any information or material beyond that required to be produced under the

Court's Standing Discovery Order (which, of course, includes a requirement that the government

produce Brady material).

WHEREFORE, given that the defendants' requests are improper, and in light of the fact that

the defendants have failed to make any showing of materiality in support of the requests which they

have made, the government respectfully requests that this Court deny the defendants' motions for

Brady material.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By:  _____
LAWRENCE D. LaVECCHIO
Assistant U.S. Attorney
Fla. Bar No. 0305405
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, Florida 33394
(954) 356-7255/(954) 356-7230 - fax

---

[5]The examples cited herein are meant to be representative, not exhaustive.  The fact of the
matter is that almost all of the defendants' discovery requests extend well beyond the permissible
scope of Brady material.  See, e.g., Massaro's Request at page 2 ("any information concerning
the failure of any potential government witness to submit to a polygraph examination");
Hernandez' Request at page 2 ("the existence of any information that any defendant committed
an offense on behalf of the alleged Organized Crime Family, which is known to the Government
and not charged in the Indictment").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. mail to the following on this 15th day of _June_ 2001.

Richard K. Houlihan, Esq. **(for Anthony Trentacosta)**
300 Aragon Avenue, Ste. 310
Coral Gables, Florida 33134

Fred Haddad, Esq. **(for Frederick J. Massaro)**
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Samuel D. DeLuca, Esq. **(for Francis Ruggiero)**
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esquire **(for Ariel Hernandez)**
1035 NW 11th Avenue
Miami, Florida 33136

Donald Spadaro, Esquire **(for Julius B. Chiusano)**
1000 S. Federal Highway, Suite 103
Fort Lauderdale, Florida 33316

Michael G. Smith, Esquire **(for Adam Todd Silverman)**
633 SE 3rd Avenue, Suite 4F
Fort Lauderdale, Florida 33301

Albert Z. Levin, Esquire **(for Carlos Garcia)**
888 Brickell Avenue, Sixth Floor
Miami, Florida 33131

Thomas Almon **(for Charles P. Monico)**
321 NE 26th Street
Miami, Florida 33137

Manuel Gonzalez, Esquire **(for Anthony R. Banks)**
782 NW Le Jeune Road, Suite 440
Miami, Florida 33126

William D. Matthewman, Esq. **(for Ariel Hernandez)**
2300 Glades Rd., Suite 340 - West Tower
Boca Raton, Florida 33431

Christopher A. Grillo, Esq. **(for Frederick J. Massaro)**
1 East Broward Blvd., #700
Ft. Lauderdale, Florida 33301

LAWRENCE D. LaVECCHIO
Assistant United States Attorney

6

U.S. Department of Justice

United States Attorney

*Southern District of Florida*

---

*Organized Crime Section*

*500 East Broward Boulevard, Suite 700*
*Fort Lauderdale, Florida 33394*
*(954) 356-7255 office*
*(954) 356-7230 fax*

June 14, 2001

To: All Counsel of Record

RE: United States v. Anthony Trentacosta et al.
Case No. 00-6273-CR-HUCK

In conformity with Sections C through E of the Standing Discovery Response which has been entered in the above-styled case, the following disclosures are being made:

1. Enclosed herewith are the NCIC criminal history reports for the following individuals whom the government may seek to call as witnesses at trial:
   A.  David Alwais;
   B.  Gary Arthur;
   C.  Jeanne Brooks;
   D.  Allan Cohen;
   E.  William Dante;
   F.  Edward Dougherty;
   G.  Steven Horowitz;
   H.  Louis Maione;
   I.  Daniel Meisel;
   J.  Rocco Napolitano;
   K.  Albert Polito;
   L.  Peter Roussonicolas;
   M.  Joseph Spitaleri;
   N.  Jeffrey Trapkin; and
   O.  Francisco Valdes.

2. Enclosed herewith are copies of proffer agreements entered into between the government and the following persons:
   A.  Michael Falco;
   B.  Steven Horowitz;
   C.  Joseph Maffei; and
   D.  Daniel Meisel.

3. Enclosed herewith are copies of plea agreements entered into between the government and the following persons:
   A.  Edward Dougherty (Case no. 93-210 (WGB);
   B.  Daniel Meisel (Case no. 00-6154-CR-DIMITROULEAS);
   C.  Joseph Spitaleri (Case nos. 00-6206-CR-ZLOCH and 00-6309-CR-SEITZ); and
   D.  Francisco Valdes (Case no. 00-0084-CR-SEITZ).

4. Enclosed are copies of motions filed by the government seeking, and/or orders granting,

reductions of sentences which had been imposed upon the following persons:

      A. David Alwais;

      B. Daniel Meisel; and

      C. Peter Roussonicolas.

5. The following is a list of payments which have been made to, or on behalf of, the following persons by agents of the government:

      A. David Alwais - $48,610.64 ($500.00 for services, $48,110.64 for expenses);

      B. Edward Dougherty - $368,979.37 ($7,030.95 for services, $361,948.42 for expenses);

      C. Joseph Maffei - $690.00 (expenses)

      D. Louis Maione - $392,656.08 ($101,650.00 for services, $291,006.08 for expenses);

      E. Albert Polito -   $70,873.79 ($720.00 for services, $70,173.79 for expenses);

      F. Peter Roussonicolas - $6,514.12 ($506.74 for services, $6,007.38 for expenses);

6. Enclosed is a non-target letter with reference to Jeffrey Kamlet.

7. According to Francisco Valdez, he has a history of psychiatric treatment which dates back to the time he was eighteen years old. Prior to his arrest in case no. 00-0084-CR-SEITZ, Francisco Valdez was receiving treatment at the Northwest Dade Community Mental Health Center, where he had been diagnosed with psychotic disorder due to head trauma and intermittent explosive disorder. According to the medical department at FDC, Valdes has been diagnosed with depression and anxiety, and is currently prescribed divalproex sodium (250 mg.) and buspirone (5 mg.).

8. Prior to his cooperation with the government, Albert Polito was a participant in the criminal enterprise described in the indictment in the case of United States v. Reynolds Maragni et al., case no. 00-6154-CR-DIMITROULEAS. To date, Mr. Polito has not been charged with any offense based upon his activity in this enterprise. Mr. Polito has been admitted to Witness Security Program.

9. During his cooperation with the government in the investigation which gave rise to the charges in United States v. Nicholas Corozzo et al., case no. 96-6205-CR-ROETTGER, Maione misappropriated several thousand dollars belonging to defendant Sydney Alwais. It was believed that these funds were derived from loansharking activity, but Maione was not authorized to convert them to his own use. In 1996, Maione was admitted to the Witness Security Program.

Sincerely,

GUY A. LEWIS
UNITED STATES ATTORNEY

BY

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

Enclosures.