UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>00-6273-CR-HUCK/BROWN</u>

NIGHT BOX
FILED

OCT 10 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,

          PLAINTIFF,

v.

ANTHONY TRENTACOSTA et al.,

          DEFENDANTS.
_____/

## GOVERNMENT'S MOTION TO RESOLVE ALL TAPE RECORDING RELATED ISSUES

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and files this Motion to Resolve All Tape Recording Related Issues herein, and urges that such matters should properly be conducted outside the presence of the jury.

### PROCEDURAL HISTORY

At trial, the government will offer into evidence certain audiotapes, with corresponding transcripts, which have previously been made available to the defendants and which depict the defendants engaging in the crimes charged in the indictment.[1] Certain of the defendants have previously filed motions seeking the suppression of the wiretap evidence, and these motions have been denied.[2] Consequently, given that the aforesaid evidence is clearly relevant to the offenses

---

[1] Some of these audiotapes were obtained with the consent of one of the parties to the conversation. The majority of these audiotapes were made in compliance with orders entered by The Honorable William P. Dimitrouleas authorizing the interception of wire communications occurring on certain telephones.

[2] On September 10, 2001, Magistrate Judge Stephen T. Brown rendered his Report and Recommendation denying Frederick J. Massaro's Motions to Suppress; that Report and Recommendation was adopted as the Order of this Court on September 27, 2001. On August 29, 2001, Magistrate Judge Brown rendered his Report and Recommendation denying Ariel Hernandez' Motion to Suppress; no objections were filed by the defendant. On September 5, 2001, Magistrate Judge Brown filed his Report and Recommendation denying Anthony Trentacosta's Motion to Suppress; to date, no objections have been filed by the defendant, however this Court has given defense counsel until October 18, 2001 to do so.

charged herein, the sole issues for the court's consideration are those which are addressed hereinbelow. The government respectfully submits that, as preliminary questions concerning the admissibility of evidence, these issues shall be determined by the Court under circumstances where the rules of evidence are inapplicable. Rule 104(a), Fed.R.Evid. Hence, these matters should properly be determined outside the presence of the jury. United States v. Carbone, 798 F.2d 21, 25 (1st Cir. 1986) ("The preferred way of handling challenges to the accuracy and audibility of tape recordings is at a pretrial hearing.") Moreover, in order to conserve the Court's time in this regard, the government requests that this Court order the defendants to state with specificity what, if any, specific objections they have to the admission of this evidence, and that these objections be made prior to the commencement of trial.

## MEMORANDUM OF LAW

I. <u>Admissibility of Tape Recordings - Authenticity</u>

In <u>United States v. Biggins</u>, 551 F.2d 64 (5th Cir. 1977), the Court observed that the trial judge has broad discretion in determining whether to allow a tape recording to be played before a jury and determining whether the party introducing such evidence has sufficiently demonstrated that the recording is an accurate reproduction. The <u>Biggins</u> court rejected the more stringent requirements adopted by the Eighth Circuit in <u>United States v. McMillan</u>, 508 F.2d 101 (8th Cir. 1974), and set forth a general rule that requires the government to go forward with respect to the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions or alterations to the relevant portions of the recording, and the identification of the relevant speakers. The <u>Biggins</u> court also held as follows:

> If the trial judge independently determines that the recording accurately reproduces the auditory evidence, however, his discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish.

<u>Id</u>. at 67.[3]

---

[3] The <u>Biggins</u> court also expressed, as its reason in placing this burden on the government, that "[a] defendant will often hear the tape recording for the first time in court... It is therefore

The evidence used to determine accuracy of a tape recording may be direct or circumstantial, United States v. Bright, 630 F.2d 804 (5th Cir. 1980), and the possibility of alterations to the tape need not be eliminated absolutely, but only to a reasonable possibility. Id. at 819, citing United States v. Haldeman, 559 F.2d 31 (D.C. Cir. 1976), cert. denied, 97 S.Ct. 1692 (1977). Accord, United States v. Shabazz, 724 F.2d 1536 (11th Cir. 1984). Once the proper foundation is laid by the government, the defendant has the burden of rebutting it. United States v. Sarro, 742 F.2d 1286 (11th Cir. 1984). Authenticity can be established by the testimony of a witness that the tape accurately depicts the conversations recorded. Louis Vuitton S.A. v. Spencer Handbags, Corp., 765 F.2d 966, 973 (2nd Cir. 1985). Where the government establishes through testimony that the tape recordings being offered are in fact actual reproductions of the conversations which occurred, chain of custody is irrelevant. United States v. McCowan, 706 F.2d 863 (8th Cir. 1983), citing United States v. Derring, 592 F.2d 1003 (8th Cir. 1979); United States v. Mahone, 537 F.2d 922 (7th Cir.), cert. denied, 97 S.Ct. 646 (1976). However, the witness authenticating a tape recorded conversation need not be someone who participated in or personally overheard the subject matter of the recording. United States v. Rengifo, 789 F.2d 975, 978 (1st Cir. 1986); United States v. Fuentes, 563 F.2d 527 (2d Cir.), cert. denied, 98 S.Ct. 491 (1977). In Rengifo, the Court held that a sufficient foundation had been met where the government showed that its witness, while he had not heard or participated in the recorded conversations, had supervised the wiretap from the day it was authorized, and also evinced intimate, detailed knowledge of the procedures used. Id., 789 F.2d at 978-79. He was also able to describe in detail the activities of the agent actually manning the listening post. Id. See also, United States v. Cortelleso, 663 F.2d 361 (1st Cir. 1981); United States v. Millan, 817 F.Supp. 1072 (S.D.N.Y. 1993).

---

important that the defendant be alerted regarding any possible uncertainties or distortions in the recording before it is introduced as evidence against him." Id., 551 F.2d at 66. By contrast, in the instant case, the defendants have had access to, and have presumptively reviewed, all of the tape recordings which will be offered at trial herein. Moreover, courts have implied that the Biggins foundation should be relaxed where the party opposing admission of the tapes does not make a well-founded accusation of impropriety or inaccuracy. United States v. Shabazz, infra., 724 F.2d at 1539; Louis Vuitton v. Spencer Handbags Corp., infra, 765 F.2d at 974.

In establishing the competency of the operator of a recording device and the fidelity of the recording equipment, the fact that the recording was successfully made will suffice. United States v. McCowan, supra.

In establishing the identity of the relevant speakers, a witness' familiarity with the voice sought to be identified is sufficient to ensure the reliability of the identification. It is of no consequence whether said familiarity developed before or after the time of the recording. Biggins, supra, 551 F.2d at 68, citing Fed.R.Evid. 901(b)(5).

In United States v. Scully, 546 F.2d 255 (9th Cir. 1976), cert. denied, 97 S.Ct. 1654 (1977), appellants challenged the government's authentication of recorded telephone conversations involving six separate individuals. They argued that the government did not produce sufficient evidence to identify the speakers in the conversations. However, the appellate court upheld the admission of the tapes as to each of the six appellants under varied circumstances. The voices of two of the appellants were identified by an agent who had personal conversations with them and had also heard them speak on other occasions. Id. at 270. The voice of a third appellant's voice was identified by the same agent by comparing the voice to that on a different tape played in court earlier and authenticated then.

The other three voices on the tape, however, were authenticated by circumstantial evidence. That of appellant George Cabral was authenticated by evidence that a person who identified himself as "George" on the tape used a telephone located at the residence where George Cabral lived. The voices of Steven Sanchez and Terrance Macedo where authenticated by testimony that persons who identified themselves as "Steve" or "Terry" made or received calls from residences where Sanchez and Macedo lived, respectfully.

Similarly a "telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." Advisory Committee notes to Rule 901(b)(4). Courts have approved the authentication of speakers based upon evidence of the context and timing of a call or the speaker's response in a manner expected due to an earlier

communication. In <u>United States v. Espinoza</u>, 641 F.2d 153, 170 (4th Cir.), <u>cert. denied</u>, 102 S.Ct. 153 (1981), the Fourth Circuit acknowledged and approved the use of circumstantial evidence "to identify [the defendant] as the person" with whom a witness had spoken on the telephone regarding an order for "kiddie porn." The shipping of the "kiddie porn" to the witness, and the fingerprint of the defendant on the invoice compelled the court to support the identification of the defendant's voice in the district court. <u>Id</u>. Thus, the identification of voices can be made by persons familiar with the voices regardless of when that familiarity was established and/or by circumstantial evidence.

In the case at bar, the government will be offering duplicated recordings of the original taped conversations. Where the government establishes through testimony that the duplicate recordings introduced at trial are exact recordings of conversations contained in the original tapes, they are admissible. <u>United States v. DiMatteo</u>, 716 F.2d 1361 (11th Cir. 1983), <u>cert. denied</u>, 106 S.Ct. 172 (1985). The burden of raising a genuine issue as to the authenticity of the originals is on the party opposing admission. <u>Id</u>., citing <u>United States v. Georgalis</u>, 631 F.2d 1199 (5th Cir. 1980). <u>See also</u> <u>United States v. Whitaker</u>, 372 F.Supp. 154 (M.D.Pa. 1974) (Summary tapes of wiretap conversations admissible where the defendants failed to show inaccuracy), <u>affirmed</u>, 503 F.2d 1400 (3rd Cir. 1974), <u>cert. denied</u>, 95 S.Ct. 789 (1975); <u>United States v. Riccobene</u>, 320 F.Supp. 196 (E.D.Pa. 1970) (copies of tape recordings admissible where defendants failed to show inaccuracy), <u>affirmed</u>, 451 F.2d 586 (3d Cir. 1971). Testimony that a copy of a recording accurately reflects the conversation will suffice to overcome a non-specific objection based on the fact that a duplicate, and not the original, is being introduced. <u>DiMatteo</u>, <u>supra</u>, 716 F.2d at 1368.

II.   Admissibility of Tape Recordings - Audibility

Another criterion for admission is that the tapes be sufficiently audible and comprehensible for the jury to consider their contents. <u>United States v. Slade</u>, 627 F.2d 293, 301 (D.C. Cir.), <u>cert. denied</u>, 101 S.Ct. 608 (1980). For example, gaps or inaudible portions do not constitute a bar to admissibility unless they are so substantial as to render the entire recording untrustworthy. <u>Lively</u>, 803 F.2d at 1129. <u>See also</u>, <u>United States v. Llinas</u>, 603 F.2d 506, 508 (5th Cir. 1979), <u>cert. denied</u>,

100 S.Ct. 1030 (1980). Inaudibility goes to weight rather than admissibility of audiotapes. United States v. Vega, 860 F.2d 779, 790 (7th Cir. 1988). The trial court has broad discretion in determining whether to allow an imperfect recording into evidence.

In United States v. Harrell, 788 F.2d 1524 (11th Cir. 1986), the appellants challenged the trial court's refusal to omit certain tapes from evidence based upon imperfections on the tapes. The court upheld the admission of the tapes into evidence in spite of the imperfections where the trial court fully satisfied the authentication requirements set forth in Biggins, supra. Id. at 1527.

In United States v. Wilson, 578 F.2d 67, 69 (5th Cir. 1978), the Fifth Circuit noted the standard to be applied in cases in which problems of tape unintelligibility exist:

> Tape recordings which are only partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. The initial decision whether to admit into evidence a recording containing inaudible or unintelligible portions is committed to the sound discretion of the trial court. Here, the district court listened to the tape and recognized that some of the conversation was not intelligible, but found that a sufficient portion was understandable and had enough probative value to warrant its admission. After carefully listening to the tape, we agree with the district court's decision to admit the tape. While some portions of the recording are inaudible and unintelligible, much of it can be heard clearly. Certainly, defendants have not shown an abuse of the district court's discretion.

The court in United States v. Bynum, 567 F.2d 1167 (1st Cir. 1978), also deferred to the trial court's discretion in admitting an imperfect videotape of a bank robbery. The appellant argued that the film was so hazy as to be useless to the jury. On review the Bynum court noted that the determination of whether a videotape is sufficiently clear to be admitted in evidence was a matter properly within the trial court's discretion and found no abuse in the decision to admit the videotape of the robbery scene. Id. at 1171.

In United States v. Robinson, 763 F.2d 778 (6th Cir. 1985), the appellants challenged the trial court's admission into evidence of partially inaudible recordings of conversations which occurred in a defendant's judicial chambers. The court upheld the admission of the tapes into evidence in spite of background noises which rendered portions of the tape recordings inaudible.

When a recording is offered only to show that a conversation occurred between the parties, the fact that substantial portions of the conversations are unintelligible should not cause its exclusion. James G. Carr, The Law of Electronic Surveillance, 450 (1977).

Given the inherent difficulties in the ability of recording equipment to produce flawless recordings, courts will allow a party offering taped evidence to use certain techniques designed to improve clarity. Filtering a tape to improve audibility and comprehension is no bar to admissibility. Slade, supra, 627 F.2d at 301; United States v. Craig, 573 F.2d 455, 477-79 (7th Cir. 1977), cert. denied, 99 S.Ct. 83 (1978). Audibility is often affected by background noise, accents and speaking speeds of the speakers, deafness of the listener, slang, weather conditions, etc. Filtering, use of earphones and/or use of transcripts are all acceptable ways to improve audibility and/or comprehension. Haldeman, supra, 559 F.2d at 54 n. 15; United States v. Bryant, 480 F.2d 785, 790 (2nd Cir. 1973); Fountain v. United States, 384 F.2d 624, 631 (5th Cir. 1967), cert. denied, 88 S.Ct 1246 (1968).

If by using a transcript a person is better able to hear and understand the conversation, then the tape's audibility has been established. United States v. Kirk, 534 F.2d 1262, 1276-77 (8th Cir. 1976), cert. denied, 97 S.Ct. 1174 (1977).

Thus, while an audio or visual tape offered into evidence must be sufficiently clear and comprehensible to the jury in order to be admissible, imperfections will not in and of themselves justify exclusion. Moreover, clarity enhancing techniques will be allowed so long as they do not rise to the level of material manipulations.

III.   Use of Transcripts

In the case at bar, the government has provided the defendants with final transcripts of tape recordings which will be offered at trial. The defendants have not raised any objections to the accuracy of any of the government's transcripts. Hence, said transcripts should be admitted during trial of this cause.

In the seminal case of United States v. Onori, 535 F.2d 938 (5th Cir. 1976), this Circuit set

forth guidelines for admission of transcripts as aids to the jury during the playing of tape recordings. The Onori court held that the trial court should first attempt to devise a "stipulated" transcript to which all parties can agree, preferably at a pre-trial conference. If no "official" transcript can be produced, then each side should be allowed to admit its own version of a transcript, for consideration by the jury as a matter of contested fact. In such an event, each party would be allowed to present evidence supporting the accuracy of its version. Id. at 949. Where, as here, the government has produced transcripts of tape recordings, it is the defendant's burden to challenge the accuracy of those transcripts by presenting the court with his own version. United States v. Cruz, 765 F.2d 1020 (11th Cir. 1985). His failure to do so precludes his objecting to the accuracy of the government's versions. Id. See also, United States v. Rosenthal, 793 F.2d 1214 (11th Cir. 1986), cert. denied, 107 S.Ct. 1377 (1987); United States v. Llinas, 603 F.2d 506 (5th Cir. 1979), cert. denied, 100 S.Ct. 1030 (1980); United States v. Wilson, 578 F.2d 67 (5th Cir. 1978).

In the instant case, the purpose for which the government is offering transcripts is two-fold: (1) Some portions of some tape recordings may be relatively difficult to hear, and (2) without the aid of a transcript, it may be difficult to identify the speakers. This Circuit has held these to be two valid reasons for use of transcripts. United States v. Onori, supra., 535 F.2d at 947, citing United States v. McMillan, 508 F.2d 101 (8th Cir.), cert. denied, 95 S.Ct. 1577 (1974). This Court has the discretion, and the government urges, that, in addition to allowing the use of these government transcripts as jury aids during trial, the court allow the jury to utilize the transcripts during deliberations. United States v. Brown, 872 F.2d 385, 392 (11th Cir.), cert. denied, 110 S.Ct. 253 (1989); United States v. Williford, 764 F.2d 1493 (11th Cir. 1985); United States v. Costa, 691 F.2d 1358 (11th Cir. 1982).

Wherefore, the government prays that this Court allow the admission of audiotapes and transcripts offered by the United States during trial of this cause; urges that the court resolve any issues regarding the admission of such evidence outside the presence of the jury; and prays that the Court order the defendants to assert any specific objections which they may have to the admission

of said evidence in the form proposed by the government prior to trial herein.

        Respectfully submitted,

        GUY A. LEWIS
        UNITED STATES ATTORNEY

By: _____
    LAWRENCE D. LaVECCHIO
    Assistant U.S. Attorney
    Fla. Bar No. 0305405
    500 E. Broward Blvd., Ste. 700
    Ft. Lauderdale, FL 33394
    (305) 356-7255
    (305) 356-7230 - Fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. mail to the following on this 10th day of October 2001.

Stephen H. Rosen, Esq. **(for Anthony Trentacosta)**
Suite 1020
1221 Brickell Avenue
Miami, Florida 33131

Fred Haddad, Esq. **(for Frederick J. Massaro)**
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Samuel D. DeLuca, Esq. **(for Francis Ruggiero)**
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esquire **(for Ariel Hernandez)**
1035 NW 11th Avenue
Miami, Florida 33136

Donald Spadaro, Esquire **(for Julius B. Chiusano)**
1000 S. Federal Highway, Suite 103
Fort Lauderdale, Florida 33316

Michael G. Smith, Esquire **(for Adam Todd Silverman)**
633 SE 3rd Avenue, Suite 4F
Fort Lauderdale, Florida 33301

Albert Z. Levin, Esquire **(for Carlos Garcia)**
888 Brickell Avenue, Sixth Floor
Miami, Florida 33131

Thomas Almon **(for Charles P. Monico)**
321 NE 26th Street
Miami, Florida 33137

Manuel Gonzalez, Esquire **(for Anthony R. Banks)**
782 NW Le Jeune Road, Suite 440
Miami, Florida 33126

LAWRENCE D. LaVECCHIO
Assistant United States Attorney