UNITED STATES DISTRICT COURT IN AND
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE # 00-6273-CR-HUCK

v.

ANTHONY TRENTACOSTA,
a/k/a/ "Tony Pep", et al.
_____/

**DEFENDANT TRENTACOSTA'S CORRECTED OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO SEVER**

COMES NOW the defendant, Anthony Trentacosta (Trentacosta), by and through undersigned counsel, and files his objections to the United States Magistrate Judge's order denying the defendant's motion to sever his trial from all of the co-defendant's herein, and states as follows:

CHRONOLOGICAL HISTORY OF MOTION TO SEVER

1    That on March 30, 2001, Trentacosta filed a Motion to Sever.

2.   That on May 30, 2001, the government filed a joint response to motions for severance filed by Trentacosta and co-defendants Ariel Hernandez and Julius Bruce Chiusano.

3.   That on August 09, 2001, United States Magistrate Judge Stephen T. Brown entered an order denying the motion to sever filed by Trentacosta.

4.   Trentacosta hereby files his objections to Magistrate Judge Brown's findings and holdings, dated August 9, 2001.

OBJECTIONS

In denying Trentacosta's motion for severance, Magistrate Judge Brown reasoned and entered a finding that Trentacosta did not make the required showing that a compelling prejudice would result

1



from requiring him to go to trial with his co-defendants or that there was misjoinder of counts and defendants.

Compelling Prejudice

Rule 14, Relief from Prejudicial Joinder, of the Federal Rules of Criminal Procedure provides that:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Trentacosta submits that the evidence necessary to prove the crimes set forth in counts 2 through 25, counts in which he did not participate, or aid and abet, are so highly prejudicial that a jury will not be able to "realistically compartmentalize the disparate evidence with respect to the other defendants". *(United States v. Hayworth,* 168 F.R.D. 658 (D.N.M.)(severance granted for defendants were charged with drug crimes from defendant who were charged with crimes subject to the death penalty.)

Counts, 2 - 25, make allegations of multiple acts or threats of murder, extortion, extortionate extensions of credit, collection of extensions of credit by extortionate means, bank fraud, theft from interstate commerce, and interference with commerce by threats or violence. Counts 2 - 16 charge co-defendants Massaro, Hernandez, and Chiusano with fraud by use of counterfeit checks, and Count 21 charges the same co-defendants with making and uttering counterfeit securities. Count 22 charges co-defendants Massaro and Ruggiero with making extortionate extensions of credit, and Count 23 charges these co-defendants, along with co-defendants Silverman and Garcia with using extortionate

means to collect and attempt to collect these extensions of credit. Count 24 charges Massaro with possession of goods stolen from an interstate shipment of property. Count 25 charges Massaro with possession of firearms by a convicted felon.

Counts 24 and 25, wherein Massaro is charged with possession of stolen property and a large number of firearms and a firearm silencer are not even alleged as being a part of the RICO. The prejudice flowing from proof of these counts, especially Count 25, is obvious. A trial of this count will necessarily involve the parading of semi-automatic weapons and silencers before the jury. Along with the introduction of Massaro's criminal record . This evidence can only cause irreparable prejudice and harm to Trentacosta that no curative instruction could help temper. Trentacosta argues that the prejudice from a misjoinder of co-defendants/counts has been made even more egregious by the inclusion in the indictment of counts 18 and 19, which allege a conspiracy to murder Jeanette Smith, the actual murder of Jeanette Smith, and the cover up of that murder. The violent nature of the evidence (photographs of nude victim stuffed in a box, etc.), necessary to prove this alleged murder will so prejudice the jury that again no curative instruction will suffice. To make matters worse, the government alleges in count 20 that various co-defendants excluding Trentacosta, conspired to murder a fellow co-defendant, Hernandez.

Further, Trentacosta contends that the government's inclusion of these counts in this indictment is only to bolster it's otherwise weak case against him. Any alleged nexus between Trentacosta and his co-defendants, is so tenuous as to be non-existent. This is evident for several reasons.

First, the relationship between Trentacosta and his co-defendants is outlined in count one of the indictment subsections 8 (a) & (b), the Means and Methods of the Racketeering Conspiracy. This

subsection alleges that Trentacosta met with co-defendant Massaro to give instructions to Massaro and to be paid in return. The government in it's discovery has failed to provide counsel with any evidence to support these allegations. Perhaps an inspection in camera by the Court of the grand jury transcripts would be necessary to determine the validity of these allegations; in essence, that Trentacosta joined the enterprise. Furthermore, there is no allegation in the indictment that Trentacosta was aware of any of, much less participated in, or aided and abetted the conduct which counts 2 - 25 are based. As a predicate to the introduction of any heresay statements made by co-defendants made during the course of the conspiracy the government has the burden to prove the existence of the conspiracy and that Trentacosta joins therein.

Secondly, Anthony Ruggiano is alleged to be in control of the enterprise from October 1, 1994 up until his death on March 19, 1999. From March 19, 1999 until mid-May, 1999 the enterprise was without a (boss) or (crew chief). This is supported by an affidavit signed by F.B.I. Agent Terry L. Feisthammel of May 20, 1999 that was submitted as part of an application for a wire tap on various phones utilized by the enterprise. On page 43 and 52 of the affidavit, that based upon a conversation that an F.B.I. Informant had with one Mike Falco on May 7, 1999 the agent alleges that since Ruggiano's death, Massaro was no longer in a specific crew of the Gambino family and that only recently Massaro, became a member Trentacosta's crew. Further, the agent concludes "that since Massaro has recently been assigned to the crew of Trentacosta, that Massaro will have more contact with Trentacosta as Massaro receives instructions from Trentacosta on criminal matters" page 52. This affidavit establishes that Trentacosta could not, even in the light most favorable to the government, have been associated with the charges and conduct alleged in the various counts in the indictment. The conduct upon which counts 2 - 20 are based occurred prior to mid-May, 1999.

Further, the government has no proof to support any nexus between Trentacosta and his co-defendants and their criminal conduct alleged in the indictment.

Trentacosta objects to the Magistrate Judge's finding that any argument that Trentacosta will be prejudiced by the evidence of the murder of Jeanette Smith's is less compelling because the government proffered that it will be presenting evidence that Trentacosta was involved in the subsequent conspiracy to murder Hernandez, the alleged murderer of Smith. The magistrate in effect is saying that any prejudice from the evidence of the actual murder will be minimized by the evidence of a subsequent threat to murder someone else; in essence, that the impact of the murder of Smith will be "cleansed" by the conspiracy to commit another murder. Logically, the evidence of the subsequent conspiracy to murder will only increase the prejudice caused by the murder of Smith.

In support of this contention, the government is relying heavily on a March 27, 1999 telephone call between Massaro and Hernandez, the alleged victim of a conspiracy to murder in count 20. The conversation is far from convincing that any conspiracy to murder Hernandez even existed. Further, that if one existed, no proof that it was part of the RICO conspiracy.

Misjoinder of Counts

Trentacosta objects to the Magistrate Judge's finding that Trentacosta is not entitled to a severance of counts nor is improperly joined with the other defendants. Trentacosta re-submits the argument presented above as demonstrating the lack of common plan or scheme between himself and the co-defendants, and as evincing that he did not participate in the same act(s) or transaction(s) as the co-defendants. Therefore, pursuant to Rule 8, Fed.R.Crim.P., Trentacosta should not be required to be tried with his co-defendant's.

Co-Conspirator Statements

5

The Magistrate Judge did not make a finding or ruling as to co-conspirator statements. Trentacosta will submit the issue of severance because of co-conspirator statements by separate pleading, if necessary.

Pretrial hearing

Counsel for Trentacosta in good faith believes that the government cannot establish the required nexus between Trentacosta and the enterprise to justify holding Trentacosta accountable for the conduct of his co-defendants. Therefore, counsel requests this Court conduct a pretrial hearing, in the nature of that addressed in U.S. vs James, 590 F2d, 575 (5th Cir. 1979), to make a pretrial determination as to whether the government can prove that Trentacosta joined the enterprise and therefore, all co-conspirator statements under 801 (d )(2)(E) are admissible.

Respectfully submitted,

STEPHEN H. ROSEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was mailed to on this 22nd day of October, 2001 to:

**LAW OFFICES OF STEPHEN H. ROSEN, P.A.**
1221 Brickell Avenue
Suite 1020
Miami, Florida 33131
Florida Bar No. 154144
(305) 358-6789

_____
STEPHEN H. ROSEN
Counsel for Defendant Trentacosta

AUSA, Lawrence LaVecchio
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, FL 33394

Alejandro Taquchel, Esq. (Attorney for Carlos Garcia)
3750 W. 16th Avenue, Suite 238
Hialeah, FL 33012

Fred Haddad, Esq. (Attorney for Fredrick J. Massaro)
One Financial Plaza
Suite 2612
Ft. Lauderdale, FL 33394
954-467-6767

Thomas Almon, Esq. (Attorney for Charles P. Monico)
321 N.E. 26th Street
Miami, FL 33137

Samuel D. Deluca, Esq. (Attorney for Francis Ruggiero)
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esq. (Attorney for Ariel Hernandez)
1035 NW 11th Avenue
Miami, FL 33136

Donald Spadero, Esq. (Attorney for Julius B. Chiusano)
1000 S. Federal Highway, Suite 103
Ft. Lauderdale, FL 33316

Michael Smith, Esq. (Attorney for Adam T. Silverman)
633 SE 3rd Street, Suite 4F
Ft. Lauderdale, FL 33301