NIGHT BOX
FILED
APR ...
CLARENCE MADDOX
CLERK, USDC S.D.FL. / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6273-CR-HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

ANTHONY TRENTACOSTA,

    Defendant.
_____/

## GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND MOTION FOR UPWARD DEPARTURE

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorneys, and hereby files its Objections to defendant Anthony Trentacosta's Presentence Investigation Report (hereinafter "PSR") and its Motion for Upward Departure.

I.    *Introduction*.

On December 14, 2001, the jury returned guilty verdicts against defendants Anthony Trentacosta, Frederick J. Massaro and Ariel Hernandez.[1] The evidence at trial established that, as a

---

[1] Trentacosta was convicted of Count 1 (RICO Conspiracy). Frederick J. Massaro was convicted on Count 1 (RICO Conspiracy - 18 USC 1962(d)), Counts 2-16 (Bank Fraud - 18 USC 1344), Count 17 (Conspiracy to Commit Murder in Aid of Racketeering - Jeanette Smith - 18 USC 1959(a)(5)), Count 18 (Murder in Aid of Racketeering - Jeanette Smith - 18 USC 1959(a)(1)), Count 20 (Conspiracy to Commit Murder in Aid of Racketeering - Ariel Hernandez - 18 USC 1959(a)(5)), Count 21 (Uttering Counterfeit Checks - 18 USC 513), Count 22 (Conspiracy to Make Extortionate Extensions of Credit - 18 USC 892(a)), Count 23 (Conspiracy to Participate in the Use of Extortionate Means to Collect Extensions of Credit - 18 USC 894(a)(1)) and Count 24 (Theft from Interstate Shipments - 18 USC 659). Ariel Hernandez was

member of the Gambino Organized Crime Family of La Cosa Nostra (hereinafter "Gambino" or "Gambino Crime Family"), Trentacosta oversaw and profited from the criminal activities of the charged enterprise, the South Florida crew of the Gambino Crime Family (hereinafter "the crew") which was run by Massaro. The crew conducted criminal activity in South Florida which included producing and uttering counterfeit checks, bank fraud, dealing in stolen merchandise, making and collecting unlawful extensions of credit, obstruction of justice and murder. Massaro paid Trentacosta "tribute" in various forms, including but not limited to, checks disguised as "consulting fees" from Father & Son Moving of Jacksonville, Inc. to Denise Trezza, Trentacosta's wife. Notwithstanding the fact that Trentacosta was not "formally" recognized within the Gambino Crime Family as Massaro's boss until the death of Anthony Ruggiano a/k/a "Fat Andy" (hereinafter "Fat Andy") on March 18, 1999, Trentacosta was Massaro's *de facto* boss, and was therefore directing the affairs of the enterprise, from at least the latter part of Fat Andy's incarceration[2] and throughout the time period from Fat Andy's release from prison up to and including the time of his death. A more thorough discussion of the underlying facts is contained in the Government's Response in Opposition to Defendants' Post-Trial Motions for Judgment of Acquittal and New Trial (DE 456).

II.     *Objections to Trentacosta's PSR.*

The government hereby objects to the following sections of the Pre-sentence Report:

---

convicted on Count 1 (RICO Conspiracy - 18 USC 1962(d)), Counts 2-16 (Bank Fraud - 18 USC 1344), Count 17 (Conspiracy to Commit Murder in Aid of Racketeering - Jeanette Smith - 18 USC 1959(a)(5)), Count 18 (Murder in Aid of Racketeering - Jeanette Smith - 18 USC 1959(a)(1)) and Count 21 (Uttering Counterfeit Checks - 18 USC 513).

[2]    1984 through 1997.

    A.    Paragraph 44:

> The defendant was found guilty of Count One, conspiring to commit racketeering and violating the RICO Act, in violation of 18 U.S.C. Section 1962(d). The *underlying activity* in Count One includes the following acts: Bank fraud; uttering and possessing counterfeit and forged checks; conspiring to make extortionate extensions of credit; conspiring to collect and attempting to collect extensions of credit; and receiving stolen goods (emphasis added).

*Objection.* Paragraph 44 fails to include the following additional underlying activity: conspiracy to commit murder in aid of racketeering and murder in aid of racketeering. Specifically, paragraph 44 fails to include the acts or threats involving murder, solicitation to commit murder, and accessory after the fact to murder, in violation of Sections 782.04, 777.03 and 777.04 Florida Statutes, which were proven at trial to have occurred during the commission of the offense of conviction (i.e. RICO conspiracy) and which were set forth in the Indictment at p. 7.[3]

    B.    Paragraph 46:

> Accordingly, Count One is comprised of several separate "sub-counts," herein referred to as Count One (A), bank fraud; Count One (B), uttering and possessing of counterfeit and forged checks; Count One (C), conspiring to make extortionate extensions of credit; Count One (D), conspiring to collect extensions of credit; and Count One (E), the receipt of stolen property.

*Objection.* Paragraph 46 fails to include "subcounts" that reflect the acts or threats involving murder, solicitation to commit murder, and accessory after the fact to murder (the conspiracies to commit murder in aid of racketeering and the murder in aid of racketeering). As a result, there should

---

[3] These offenses comprised the conspiracies to murder Jeanette Smith and Ariel Hernandez in aid of racketeering, in violation of 18 USC 1959(a)(5) (counts 17 & 20), and the substantive murder in aid of racketeering of Jeanette Smith in violation of 18 USC 1959(a)(1) (count 18).

be additional paragraphs reflecting two additional groupings[4] and the resulting base offense level computations for those two additional groupings. Specifically, one group should represent the offense of committing violent crimes in aid of racketeering activity, namely, the conspiracy to commit murder [a violation of 18 U.S.C. Section 1959(a)(5)] as well as the murder of Jeanette Smith [18 U.S.C. Section 1959(a)(1)], and the second grouping should represent the offense of committing a violent crime in aid of racketeering activity, namely, the conspiracy to commit the murder of Ariel Hernandez [a violation of 18 U.S.C. Section 1959(a)(5)]. Therefore, the base offense levels for these additional groupings should properly be determined as follows:

### *Group Three - The Murder of Jeanette Smith*

***Base Offense Level***: *An offense involving murder is found in Section 2A1.1 of the Guidelines Manual. In this case, Jeanette Smith was murdered. According to Section 2A1.1(a), the base offense level is 43.*

| | |
|---|---|
| Adjustment for Role in the Offense (organizer/leader) | + 4 |
| Adjusted Offense Level (Subtotal) | <u>47</u>[5] |

### *Group Four - Conspiracy to Commit the Murder of Hernandez*

***Base Offense Level***: *An offense involving conspiracy to commit murder in aid of racketeering is found in Section 2A1.5 of the Guidelines Manual. In this case, Ariel Hernandez was the person to be murdered. According to Section 2A1.5, the base offense level is 28.*

| | |
|---|---|
| Adjustment for Role in the Offense (organizer/leader) | + 4 |
| Adjusted Offense Level (Subtotal) | <u>32</u> |

---

[4] Since the PSR only reflects two groups in paragraphs 50 - 72, the proposed two additional groups should be inserted thereafter.

[5] Insofar as the statutorily authorized maximum sentence is less than the minimum of the applicable Guidelines range, the statutorily authorized maximum sentence (in this case, twenty years) becomes the Guidelines sentence. USSG Section 5G1.1(a)

    C.    Paragraph 83:

The defendant has a total of two criminal history points and, therefore, a criminal history category of II

*Objection*. Pursuant to USSG Section 4A1.1(a), defendant Trentacosta should have received two additional points, for a total of four criminal history points, due to the fact that the defendant committed the instant offense while he was on probation for a conviction of driving under the influence. According to paragraph 82, the defendant was on probation until May 28, 1999. Therefore, the defendant's criminal history score should be III.

    III.    *Memorandum of Law In Support of Government's Objections to PSR.*

Upon conviction for RICO conspiracy, USSG Section 2E1.3(a) calls for a base offense level of 19 or "the offense level applicable to the underlying racketeering activity," whichever is greater. In determining the appropriate Guidelines sentence, this Court must make a finding as to what constitutes "the underlying racketeering activity." In the instant case, Trentacosta's RICO conspiracy conviction is based on more than one underlying offense. PSR , par. 49 - 72. The government maintains that, in addition to the offenses set forth in paragraphs 49 - 72 of the PSR, Trentacosta's RICO conspiracy conviction should also be based on offenses that include, "acts or threats involving murder, solicitation to commit murder, and accessory after the fact to murder," specifically, the conspiracy to murder and resulting murder of Jeanette Smith and the conspiracy to murder Ariel Hernandez. Although the jury previously found that Trentacosta did not *agree* "to the commission of murder in violation of Section 782.04 Florida Statutes,"[6] the evidence proved beyond a reasonable doubt that members of Trentacosta's crew carried out Smith's murder and conspired to murder

---

[6] Trentacosta's Verdict Form (DE 441).

5

Hernandez for the purpose of gaining entrance to or maintaining or increasing their position in the enterprise engaged in racketeering activity (emphasis added).[7]

Pursuant to USSG Section 1B1.3, Trentacosta must properly be held responsible for all "relevant conduct," which includes all actions of his co-conspirators that were in furtherance of the jointly undertaken activity and that were reasonably foreseeable in connection with that activity. *United States v. Matthews*, 168 F.3d 1234, 1247 (11th Cir. 1999); *United States v. Tocco*, 200 F.3d 401, 430 (6th Cir. 2000), *rehearing denied*, 209 F.3d 935 (6th Cir. 2000).[8] Therefore, Trentacosta is "liable for the foreseeable criminal acts of others in furtherance of th[e criminal] enterprise even though he did not personally participate in them," and notwithstanding the jury's above-mentioned finding. *United States v. Carrozza*, 4 F.3d 70, 75-80 (1st Cir.1993) (holding that, in jointly undertaken criminal activity, such as in a Mafia enterprise, "[r]elevant conduct increases a defendant's sentence, sometimes very significantly, despite the fact that it was not charged in an indictment ... and even despite the fact that a jury may have acquitted the defendant for that precise conduct."). See also, *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997) ("relevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence'); *United States v. Masters*, 978 F.2d 281, 285-86 (7th Cir. 1992) (utilizing murder guideline notwithstanding defendant's acquittal on that charge, holding that "judges may take other

---

[7] Massaro's and Hernandez' Verdict Forms (DE 442, 443).

[8] In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts or omissions) of others that was both: (i) in furtherance of the jointly undertaken activity; and (ii) reasonably foreseeable in connection with that criminal activity.

crimes into account when selecting a sentence under the guidelines, even if the defendant has been charged with and acquitted of those crimes'); *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991) (court may increase a defendant's base offense level to account for relevant conduct even if the defendant was not charged with or convicted of carrying out those acts); *United States v. Franklin*, 902 F.2d 501, 504 (7th Cir. 1990) (same).

As the Court will recall, FBI Supervisory Special Agent George Gabriel testified as an expert witness concerning the rules governing the organization of the Gambino Crime Family. In addition to the hierarchal structure of the organization, he testified that the rules required that non-member associates, such as Massaro, who worked for made members like Trentacosta, disclose their criminal activities and share their proceeds with made members. Those made members, in turn, would report and share those proceeds with those above them in the hierarchy of the organization. His uncontroverted testimony established that, under the rules of this criminal organization, when non-member associates perceived that their criminal activities had been infiltrated by an informant, it was their responsibility to eliminate the infiltrator. In addition, the jury found that Massaro hired Francisco Valdes and Carlos Garcia to murder Hernandez once it became clear that Hernandez' arrest would jeopardize the existence of the enterprise. Thus, the evidence at trial established that these acts involving murder were in furtherance of the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity. Consequently, they constitute relevant conduct pursuant to USSG Section 1B1.3 for purposes of calculating the offense level under 2E1.1. See, *United States v. Carrozza, supra,* 4 F.3d at 76. See also, *United States v. Zizzo*, 120 F.3d 1338, 1361-62 (7th Cir. 1997) (defendant held responsible at sentencing for collection of certain debts, even where he was not directly linked to such activities, given defendant's position as a street-level

supervisor and the reasonable foreseeability of these activities).

The Eleventh Circuit has recently held that, following conviction for RICO conspiracy, the sentencing court must use the beyond a reasonable doubt standard in determining the existence of the underlying offense. *United States v. Farese*, 248 F.3d 1056 (11th Cir. 2001).[9]  The court's decision

---

[9] The Eleventh Circuit's holding regarding the burden of proof issue in *Farese,* is based on the following interpretation of U.S.S.G. 1B1.2(d):

> It will not always be clear what the underlying racketeering activity is under U.S.S.G. 2E1.1(a) for the purpose of calculating the defendant's offense level, because the jury's verdict or the guilty plea may not specify which of the offenses listed in the indictment was the object of the conspiracy. In these circumstances section 1B1.2(d) instructs courts how to select the appropriate offense level. That section provides: "A conviction on a count *charging a conspiracy to commit more than one offense* shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. 1B1.2(d) (emphasis added). However, the commentary to section 1B1.2(d) goes on to caution that : Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

*Id.*

Even though the United States recognizes that this Court is bound by the Eleventh Circuit's holding in *Farese*, it is clear that the Eleventh Circuit departed from previously well established principles of law.  The defendants were convicted of a RICO conspiracy, not a multi-object conspiracy. As a result, the offenses which constitute "underlying racketeering activity" are not "objects of the conspiracy," but simply conduct that is relevant to participating in a criminal enterprise. The Sixth Circuit addressed this same issue in *United States v. Corrado*, 227 F.3d 528, 541-42 (6th Cir. 2000) and held as follows:.

> There is a critical distinction between the two. The multi-object conspiracy section of the Sentencing Guidelines was 'enacted to deal with multiple object conspiracies charged in a single count.' *United States v. Carrozza*, 4 F.3d 70, 79 (1st Cir. 1993). By contrast, a 'RICO conspiracy ... is considered a single object conspiracy with that object being the violation of RICO.' *Id., citing, United States v. Ruggiero*, 726 F.2d 913, 923 (2d Cir. 1984)("A RICO conspiracy under § 1962(d) based on separate conspiracies as predicate offenses is not merely a 'conspiracy to conspire' as alleged by appellants, but is an overall conspiracy to violate a substantive provision of RICO...."). Thus, the underlying acts of racketeering in a RICO conspiracy are not considered to be objects of the conspiracy, but simply conduct that is relevant to the central objective - participating in a criminal enterprise. The existence of relevant

in *Farese*, however, did not alter the standard of proof which this Court must employ in determining the scope and applicability of relevant conduct. Therefore, this Court may determine Trentacosta's relevant conduct by a preponderance standard. *United States v. Matthews*, 168 F.3d 1234, 1247 (11th Cir. 1999); *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997); *United States v. Lewis*, 115 F.3d 1531, 1536-37 (11th Cir. 1997). In the instant case, the evidence certainly establishes, by a preponderance, Trentacosta's responsibility for the acts of murder and conspiracy to commit murder which occurred in the instant case insofar as those acts were certainly reasonably foreseeable and in furtherance of the conspiracy in which he was involved..

    IV.    *Government's Motion For Upward Departure - Trentacosta's Criminal History Score Does Not Adequately Reflect The Seriousness Of His Past Criminal Conduct <u>Or The Likelihood That He Will Commit Other Crimes</u>*.

    A.    *Introduction*.

Defendant Trentacosta's current criminal history category computation of II is based on two criminal history points. PSR, par. 83.[10] Pursuant to U.S.S.G. §§ 4A1.2(e)(1) and (2), the defendant received *no* criminal history points even though he was convicted of seven (7) felonies between 1960 and 1984. *Id.* at par. 74 - 80 (emphasis added). Furthermore, the defendant has been a member of the

---

conduct is determined at sentencing by a preponderance of the evidence. *See, e.g., United States v. Voyles*, 995 F.2d 91, 93 n.3 (6th Cir. 1993), *cert. denied*, 510 U.S. 1048 (1994). At resentencing, then, the district court would only be required to find that the defendants conspired to murder Bowman by a preponderance of the evidence in order for this offense to be used to calculate the defendants' base offense level. *See Carrozza*, 4 F.3d at 80 (holding, in the context a RICO conspiracy, that 'the applicability of relevant conduct, need only be proven by a preponderance, not reasonable doubt'); *United States v. Ruggiero*, 100 F.3d 284, 291 (2d Cir. 1996) (affirming the district court's application of the preponderance of the of the evidence standard to determine the offenses underlying a RICO conspiracy).

[10] As previously set forth, the defendant's criminal history level should properly be III.

Gambino Crime Family since the late 1980s.[11] The Sentencing Guidelines provide for departures in Chapters 4 and 5 and, as will be demonstrated below, an upward departure is warranted pursuant to §§ 4A1.3 and 5K2.0 of the Sentencing Guidelines.

B.   *Section 4A1.3 of the Guidelines.*

USSG Section 4A1.3 permits a horizontal departure from the applicable guideline range if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes." Such information may include, but is not limited to, information concerning:

> (a) prior sentence(s) not used in computing the criminal history category; and
> (e) prior similar adult criminal conduct not resulting in a criminal conviction.

*Id.*

The guidelines commentary to the instructions for computing criminal history provides that "any conviction that is not counted in the criminal history score may be considered pursuant to §4A1.3 if it provides reliable evidence of past criminal activity." U.S.S.G. § 4A1.2, comment. n.6. Defendant Trentacosta's seven prior adult felony convictions, therefore, should be considered under § 4A1.3 if they provide reliable evidence of past criminal activity. In fact, § 4A1.3(e) provides that "information concerning ... prior similar adult criminal conduct not resulting in a criminal conviction" can trigger departure. This, however, is just one example of information which might warrant a departure. § 4A1.3 expressly provides that the list is not exhaustive. The two application notes which

---

[11] Special Agent Gabriel testified that a member of an organized crime family is someone who has sworn a life-long allegiance to a criminal organization.

help interpret § 4A1.3 are contained in § 4A1.2.[12] They are application notes 6 and 8.

Application note 6 supports the conclusion that similarity between the prior conduct and the offense of conviction is not necessary. Note 6 requires only that the uncounted convictions provide reliable evidence of prior criminal activity. U.S.S.G. § 4A1.2, comment. n.6.

Application Note 8 in the commentary to § 4A1.2 reads states that "if the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3." The Commission wrote that the amendment "clarifies that dissimilar, serious prior offenses outside the applicable time period may be considered in determining whether an upward departure is warranted under Section 4A1.3."

The Guidelines therefore permit the sentencing court to consider, as grounds for a U.S.S.G. § 4A1.3 departure, outdated convictions that are dissimilar, but "serious." *United States v. Brown*, 51 F.3d 233 (11th Cir. 1995) (district court found that previous fraud offenses, although dissimilar to the offense of escape, were serious in the aggregate because they continued over such a long period of time). An upward departure is also permissible if the criminal history category under the Guidelines does not adequately reflect the seriousness of the defendant's past criminal conduct, as, for example, where the defendant had received lenient treatment in the past or where points were not assessed for certain conduct. *United States v. Brown*, 9 F.3d 907 (11th Cir. 1993); *United States v. Suarez*, 939 F.2d 929 (11th Cir. 1991); *United States v. Villali*, 926 F.2d 999 (11th Cir. 1991); *United States v. Spraggins*, 868 F.2d 1541 (11th Cir. 1989).

---

[12] This section is entitled "Definitions and Instructions for Computing Criminal History." Guidelines Manual, Note 1, Section 4A1.2.

11

In the instant matter, the Court should recognize that, if defendant Trentacosta's prior convictions had not been more than 15 years old, they would have added seven points to his current criminal history point total of four,[13] for a total of 11, which would place him in criminal history category (CHC) V. According to the PSR, Trentacosta has never spent more than one year in jail, notwithstanding the fact that his numerous convictions included felony assault with a gun, theft of interstate shipment, obstruction of governmental administration and criminal contempt, and promotion of gambling (twice within a three year period). The PSR demonstrates that he has received extremely lenient treatment for a series of serious offenses. Furthermore, as a member of the Gambino Crime Family since the late 1980s, Trentacosta has sworn a life-long allegiance to one the most powerful criminal organizations in the United States. Furthermore, despite being "unemployed" for the past 23 years (PSR, par. 109), his wife owns significant assets (PSR, par. 119 - 124). This pattern of criminal felony convictions over a 24 year period, his membership in one the most powerful criminal organizations in the United States, his unemployment record and access to significant assets clearly demonstrate that defendant Trentacosta's respect for the law is negligible, his commitment to organized crime is significant and his primary means of support is derived from criminal activity. Thus, there exists ample bases upon which this Court should properly find that Trentacosta's criminal history score does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes. As the uncontroverted evidence established at trial, Trentacosta is a life-long criminal.[14]

---

[13] See objection to PSR paragraph 83.

[14] As Supervisory Special Agent Gabriel testified, once admitted to the Gambino Family, the only way a member leaves the organization is by death.

12

In raising a defendant's criminal history category on the ground that the criminal history category suggested by the Sentencing Guidelines does not adequately reflect the seriousness of the defendant's past criminal conduct, the court must look first to the next criminal history category; if that category adequately reflects defendant's past conduct, then the court must state its findings and sentence the defendant within the range for the new category, but if the court decides that the new category is still inadequate to reflect defendant's criminal history, the court must look to the next highest category and repeat its inquiry. *United States v. Adudu*, 993 F.2d 821 (11th Cir. 1993). In determining the degree of departure, the Court should compare Trentacosta's conduct to that of others in the higher category and use, as a reference, the guideline range for the category that most closely resembles his criminal history. U.S.S.G. § 4A1.3, p.s. See, e.g., *United States v. Maurice*, 69 F.3d 1553, 1558-59 (11th Cir. 1995).

C.   *Section 5K2.0 of the Guidelines.*

§5K2.0 provides that "the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating ... circumstance of a kind, or to a degree not adequately taken into account by the Sentencing Commission in formulating the Guidelines.'" Defendant Trentacosta's involvement in organized crime qualifies as an aggravating circumstance not adequately taken into consideration by the Sentencing Guidelines and so provides a proper basis for an upward departure. *United States v. Rainone*, 32 F.3d 1203, 1208-09 (7th Cir. 1994), *cert. denied*, 515 U.S. 1102 (1995) (The Chicago Outfit is the clearest possible example of a gang operating on such a scale, with such success, over such a long period of time that the danger which it poses to society is not adequately reflected in the guideline range); *United States v. Damico*, 99 F.3d 1431, 1438-39 (7th Cir. 1996), *cert. denied*, 519

U.S. 1151 (1997) (involvement in organized crime is not reflected in § 2E1.1 regardless whether base offense level is established under subsection (a)(1) or (a)(2), for neither the RICO statute nor the underlying offenses to which it applies are limited in application to defendants engaged in organized crime). See also, *United States v. Zizzo*, 120 F.3d 1338, 1360-61 (7th Cir. 1997) (same).

The language of the RICO statute does not suggest a Congressional intent to limit its application to those with organized crime ties. Since an organized crime connection is not an element of the RICO Act, it could not have been taken into consideration by the Sentencing Commission in determining the appropriate base offense level for that offense under §§ 2E1.1(a)(1) or (a)(2) of the RICO guidelines. The specific offense characteristics do not include organized crime connections under Section 2E1.1(a)(1) or (a)(2).

A defendant's involvement in organized crime is not reflected in the base offense level assigned to him under 2E1.1. "Thus, when a nexus to organized crime exists, as it admittedly does here, it provides a proper basis for departure." *United States v. Damico*, 99 F.3d at 1438. Therefore, this Court should appropriately find that the defendant's membership in organized crime is an aggravating circumstance "not adequately taken into account by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553; U.S.S.G. § 5K2.0, p.s., and upwardly depart from the applicable Guidelines range in sentencing the defendant in order to adequately reflect the seriousness of his crime, which was committed as a direct result of his life-long association with this violent and powerful criminal organization and carried out in furtherance of that organization's sinister aims.

V. <u>Conclusion</u>.

WHEREFORE, for the reasons set forth above, the above-stated objections should be

sustained and the motion for upward departure filed on behalf of the United States should be granted.

                Respectfully submitted,

                GUY A. LEWIS
                UNITED STATES ATTORNEY

By: _____
        JEFFREY H. SLOMAN
        Assistant United States Attorney
        Florida Bar No. 378879
        500 E. Broward Boulevard, Suite 700
        Fort Lauderdale, Florida 33394
        Telephone: (954) 356-7255x3576
        Facsimile: (954) 346-7228

_____
LAWRENCE D. LaVECCHIO
Assistant United States Attorney
Florida Bar No. 0305405
500 E. Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Telephone: (954) 356-7255x3588
Facsimile: (954) 346-7230

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail this 10th day of April 2002 to:

Stephen H. Rosen, Esq. (Attorney for Anthony Trentacosta)
1221 Brickell Avenue, Ste. 1020
Miami, Florida 33131

Fred Haddad, Esq. (Attorney for Frederick J. Massaro)
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Jeffrey Weinkle, Esquire (Attorney for Ariel Hernandez)
1035 NW 11th Avenue
Miami, Florida 33136

Julia K. Hyle, USPO
Room 315
300 N.E. 1st Avenue
Miami, Florida 33132

JEFFREY H. SLOMAN
Assistant United States Attorney