**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6273-CR-HUCK

UNITED STATES OF AMERICA,

    PLAINTIFF,

V.

ANTHONY TRENTACOSTA, et al.,

    DEFENDANTS.

_____/

**DEFENDANT TRENTACOSTA'S PRELIMINARY
MEMORANDUM REGARDING THE REMAND ORDER
FROM THE ELEVENTH CIRCUIT COURT OF APPEALS**

COMES NOW, Defendant Anthony Trentacosta through the undersigned counsel and files this memorandum of law in response to the government's Statement of the Evidence pursuant to Federal Rules of Appellate Procedure 10(c), which was received by the undersigned counsel on September 3, 2003. Defendant expressly reserves the right to file a particularized response in the time allotted by FRAP 10(c), setting forth the Defendant's specific objections to the government's Statement of Evidence, including whether FRAP 10(c) is applicable.

**1. THE ELEVENTH CIRCUIT'S REMAND ORDER**

In pertinent part, the Remand Order, filed July 17, 2003, states as follows:

"However, Appellant is also correct in that, without clarification as to what tapes were played and when, this Court will be unable to determine the proper state of the record on appeal."

"Accordingly, on its own motion, the Court REMANDS this matter to the District Court on a limited basis for the purpose of clarifying the record on appeal, **and** to determine, if possible, what tapes were played to the jury and when during trial they were played." (Bolding added).

The scope of this order is disputed. The Defendant maintains that this order directs the Court to determine, if possible, the specific portions of each tape played to each witness, including whether the tape was played in its entirety. Conversely, the government maintains that this order directs the Court to determine, "what tapes were played for the jury the during the trial." (Government's Memorandum at 2).

2. **SCOPE OF THE REMAND ORDER**

The Defendant submits that the Remand Order directs the Court to determine, if possible, the discrete portions of each taped played to each witness. The patent problems with the existing state of the record mandate this inquiry.

To begin, throughout the course of the trial, the prosecution examined its witnesses by playing (to them) a particular passage from a tape and then questioning the witness about the passage. The testimony of Horowitz[1] is representative. During his direct examination, Horowitz was questioned about the conversations contained in six tapes. (Government's Memorandum at 3: Exhibits No. 516A, 544A, 566A, 572A, & 614A.)[2] From these six tapes, the prosecution played roughly fifty-four (54) separate passages, which the transcript denotes as, "The tape was played."

These un-transcribed interruptions pockmark the trial transcript, making it extraordinarily difficult to read and to comprehend. As an illustration, a portion Horowitz's direction examination is as follows:

[The tape was played]

By Mr. Sloman:

Q: Do you know what Mr. Massaro was referring to?

A: Yes.

Q: What's that?

A: The key to the apartment in Aventura. (R. 22-133).

With no transcription of the passage actually played, the reader can only speculate as to the substance, context, and relevance of Horowitz's response.

---

[1] In the opinion of defense counsel, appellate counsel, and the government, Horowitz was a critical witness.
[2] The government omits Government Exhibit 571A as being played to Horowitz. (R.22-128).

3

The transcript reflects that only discreet portions of the tapes were played, and there is no suggestion that the tapes were played in their entirety to either the specific witness or to the jury. However, in its memorandum, the government contends that almost all tapes were played in their entirety. If the government's position is adopted, the record resubmitted to the Court of Appeals will be grossly enlarged.

3. **THE SOLUTION PROFFERED BY THE GOVERNMENT AND BY DEFENSE COUNSEL**

The government construes the Remand Order to direct the Court, "to determine what tapes were played for the jury during the trial." (Government's Memorandum at 2). Viewing the problem this way, the government submitted a list of the tapes played to each witness, noting how much of each tape was played to each witness.[3] In its memorandum, the government explains that these factual assertions were derived from its own, "prosecutors' notes." (Government's Memorandum at 2).

In a telephone conversation following the scheduling conference held September 2, 2003, Attorney Richard Rosenbaum and Attorney Don Samuel requested of AUSA Sloman that he provide these prosecutor's notes to

---

[3] This effort does not clarify the record. The transcript clearly identifies which tapes were played. (See e.g. R22-106, by the prosecutor: "**Would you be so kind as to turn to tab 516A**." (Bolding added))

4

defense counsel.[4]  AUSA Sloman responded in the negative and further declined to bring these notes to the hearing scheduled for September 8, 2003.  While defense counsel respects the sanctity of the government's work product, defense counsel cannot accept the government's uncorroborated assertion that the so much of each tape (usually in its entirety) was played to a witness or to the jury.

Case law is clear that the government's assertion (derived from its "prosecutors' notes") is plain hearsay and cannot be used to reconstruct the record.  *See Bui v. Haley*, 321 F.3d 1304, 1315 fn 15 (11th Cir. 2003) (At a hearing after remand for a *Batson* issue, the Court refused to consider hearsay offered by a prosecutor: "Any later statements made by Evans as to why he exercised the State's challenges, beyond this narrow time frame, however, would constitute rank hearsay.")

Additionally, case law from this Circuit provides an accepted example of how this inquiry should be conducted.  The Court in *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1212 (11th Cir. 1993), summarized the efforts by the magistrate court to reconstruct the trial record (following a remand order).  In *Preciado-Cordobas*, the magistrate judge received testimony and **trial notes** from defense counsel, the prosecutors, and the

---

[4] Attorney Charles Lea was also joined in the phone conversation.

court reporter. The magistrate then assimilated this evidence, preparing an order that adequately reconstructed the untranscribed closing argument.

Following the process described in *Preciado-Cordobas*, this Court should conduct a similar inquiry at the hearing scheduled for September 8, 2003 and direct that all trial attorneys, including the government, bring their respective trial notes to this proceeding.

## 4. CONCLUSION

Accordingly, the Defendant prays this Court conduct an inquiry sufficient to resolve the Remand Order as set forth in this memorandum.

Respectfully submitted this 5th day of September 2003.

By: _____
DONALD F. SAMUEL
Georgia Bar No. 624475

Counsel for Mr. Trentacosta

Garland, Samuel & Loeb, P.C.
3151 Maple Drive
Atlanta, GA 30305
Phone: 404-262-2225
Fax: 404-365-5041