## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**05 - 61805**

CASE NO.: _____

| | | |
|---|---|---|
| ANTHONY TRENTACOSTA, | ) | |
| Petitioner | ) | **Habeas Corpus Action** |
| Reg. No. 95851-004 | ) | **Pursuant to 28 U.S.C. § 2255** |
| FMC Butner | ) | |
| PO Box 4600 | ) | (Previously case number |
| Old N. Carolina Hwy 75 | ) | 00-6273-CR-HUCK) |
| Butner, NC 27509 | ) | |
| | ) | |
| - VERSUS - | ) | |
| | ) | NIGHT BOX |
| UNITED STATES OF AMERICA and | ) | FILED |
| WARDEN A. F. BEELER OF FMC | ) | |
| BUTNER, FEDERAL MEDICAL | ) | NOV 2 1 2005 |
| CENTER, | ) | |
| | ) | CLARENCE MADDOX |
| | ) | CLERK, USDC / SDFL / MIA |
| RESPONDENTS. | ) | |

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A

## PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255

COMES NOW, Petitioner Anthony Trentacosta (hereinafter "Petitioner"), by

and through the undersigned counselors, and files this motion pursuant to 28 U.S.C. §

2255, showing as follows:

1. Petitioner was convicted in the Southern District of Florida; case number 00-

    6273-CR-HUCK; Judge Huck presiding.

2. On April 29, 2002, the Judgment and Conviction was entered, sentencing

    Petitioner to serve 100 months in prison.

3. On September 19, 2000, in the District Court of the Southern District of Florida, Petitioner was indicted for one count of violating 18 U.S.C. § 1962(d), RICO Conspiracy. The indictment consisted of twenty-five counts, the remaining twenty-four counts pertaining to the other co-defendants. Petitioner entered a plea of NOT GUILTY to the single count of this indictment.

4. At trial, Petitioner was represented by attorney Stephen Rosen.

5. Petitioner (along with his co-defendants) was tried before a jury. The trial commenced November 19, 2001 and ended December 14, 2001. Petitioner did not testify.

6. Petitioner was found guilty on Count One, the single count in which he was named; but by a special verdict, he was acquitted of agreeing to commit murder as part of the RICO conspiracy alleged in Count One.

7. Petitioner retained the undersigned counselors to represent him in the direct appeal of his conviction.

8. On June 24, 2004, the Eleventh Circuit Court of Appeals affirmed Petitioner's conviction. A copy of this opinion is attached hereto as Exhibit A.

9. On July 15, 2004, Petitioner filed a motion with the Eleventh Circuit, requesting Panel Rehearing.

10. On July 15, 2004, Petitioner also filed "Emergency Motion To Enlarge Issues On Appeal," seeking to raise certain "*Blakely*" issues.

2

11. On or about August 24, 2004, the Eleventh Circuit denied Petitioner's request for Panel Rehearing as well as his Emergency Motion To Enlarge Issues On Appeal. (See Ex. B and Ex. C attached hereto).

12. On or about September 1, 2004, the Eleventh Circuit Court of Appeals entered the "Judgment" in this case. (See Ex. D attached hereto).

13. Petitioner has not previously filed a motion under 28 U.S.C. § 2255, challenging the legality of his incarceration on this conviction.

14. The grounds for this instant petition are predicated on the Sixth Amendment's guarantee that the Petitioner is entitled to the effective assistance of counsel at trial; the Sixth Amendment's right of compulsory process; the Sixth Amendment's right to present evidence in his defense; the Sixth Amendment right to a trial by jury; the Sixth Amendment right of confrontation; and the Fifth Amendment right to Due Process of law. Petitioner has more fully presented each enumeration supporting his Petition in a supporting brief, which is being filed contemporaneously with this pleading.

15. The issues presented in this Motion have not been previously raised in any other proceeding with the exception of Petitioner's attempt to raise the *Blakely* claim in his Motion To Enlarge The Issues On Appeal, which the Eleventh Circuit refused to address. (See ¶ 11 above).

16. No other case is pending, involving this conviction; and no future sentences exist besides the sentence (and conviction) challenged herein.

3

17. Due to unforeseen difficulties, counsel for Petitioner has not received Petitioner's Verification. Counsel intends to amend this Petition to include Petitioner's verification. (See Exhibit E).

18. Petitioner is currently incarcerated at FMC Butner, Federal Medical Center, PO Box 1600, Old N. Carolina Highway 75, Butner, North Carolina, 27509. The Warden of this facility is A. F. Beeler. Petitioner's registration number for the Federal Bureau of Prisons is 95851-004.

WHEREFORE, based on the foregoing, Petitioner urges the Court to grant the following relief:

1. That the Court set this matter down for an evidentiary hearing no less than sixty days from the date of the government's response;

2. That the Court allow Petitioner to present evidence in support of the allegations raised herein;

3. That Petitioner attend the requested evidentiary hearing on this matter;

4. That Petitioner be permitted to amend this Petition to assert additional grounds for relief;

5. That the criminal judgment from Petitioner's conviction be vacated; and

6. That the Court grant such other relief as sanctioned by the law and as warranted under the circumstances.

Respectfully submitted this 21st day of November 2005.

BY: _____
DONALD F. SAMUEL,
GA. BAR # 624475

BY: _____
W. CHARLES LEA
GA. BAR # 442006

*COUNSELORS FOR PETITIONER*

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225

5

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 02-12352

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> JUNE 24, 2004
> THOMAS K. KAHN
> CLERK

D. C. Docket No. 00-06273-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARIEL HERNANDEZ,
ANTHONY TRENTACOSTA,
a.k.a. Tony Pep,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Florida

(JUNE 24, 3004)

Before BLACK and MARCUS, Circuit Judges, and SMITH*, District Judge.

BLACK, Circuit Judge:

---

* Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

Exhibit A

Appellants Ariel Hernandez and Anthony "Tony Pep" Trentacosta were

convicted of various charges centering around a RICO conspiracy. They appeal

their convictions and Hernandez appeals his sentence. We affirm.

## I. BACKGROUND

A federal grand jury returned a 25-count indictment against 9 defendants,

including Appellants.[1]  Hernandez was subject to the following charges: (Count

1) conspiracy to violate the Racketeer Influenced and Corrupt Organizations

(RICO) Act, in violation of 18 U.S.C. § 1962(d); (Counts 2–16) bank fraud in

violation of 18 U.S.C. § 1344; (Count 17) conspiracy to commit murder in aid of

racketeering, in violation of 18 U.S.C. § 1959(a)(5) (the VICAR count); (Count

18) murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); and

(Count 21) uttering counterfeit checks, in violation of 18 U.S.C. § 513(a).

Trentacosta was subject only to the RICO conspiracy count.

After a jury trial, Hernandez was found guilty of Counts 1 through 18 and

21 (all the counts in which he was charged). He was sentenced to life

imprisonment as to each of Counts 1 and 18, 360 months' imprisonment as to each

---

[1] Six of the defendants pled guilty. Frederick Massaro, who was one of the central figures in the RICO conspiracy and was named in all the counts of the indictment save Count 19, also appealed his conviction. He passed away subsequent to the filing of briefs in this case and his appeal was dismissed as moot. Both Hernandez and Trentacosta, however, adopt arguments raised in Massaro's briefs.

2

of Counts 2 through 16, and 120 months' imprisonment each as to Counts 17 and 21, all to run concurrently. Trentacosta was found guilty of the RICO conspiracy, the only charge against him, and was sentenced to 100 months' imprisonment.

The facts at trial revolved around a South Florida "crew" connected to the Gambino Family of the Cosa Nostra. According to the Government, Trentacosta, a "made-man" or "soldier" in the Gambino Family (a fact to which he stipulated), directed the crew, which committed various criminal acts, including producing counterfeit checks, dealing in stolen merchandise, loan sharking, and ultimately murder. Trentacosta lived in Atlanta, where he operated Father & Son Moving Co., and, according to the Government, collected tribute from co-defendant Frederick Massaro (an "associate" of the Family, i.e., not a "made-man") from his South Florida activities. Trentacosta often traveled to Florida, and spoke to Frederick Massaro on the phone several times a week.

Massaro owned, *inter alia*, Father & Son Moving and Storage of Jacksonville, and Beachside Mario's, a North Miami Beach pizzeria out of which Massaro ran loan sharking activities. Frankie Valdes and co-defendant Carlos Garcia acted as Massaro's "muscle" for collecting money. The check counterfeiting scheme was also operated out of the pizzeria. Co-defendant Julius Chiusano, who operated a check cashing store, would obtain account numbers for

3

Massaro and Hernandez. The counterfeit checks were used to purchase supplies for the pizzeria and to buy items that were later returned for a cash refund or re-sold.

Hernandez went to Office Depot on several occasions to purchase items with counterfeit checks. On at least one occasion, and possibly others, he was accompanied by Jeannette Smith, an exotic dancer who worked at "Thee Dollhouse." On March 21, 1999, an unidentified woman's body—which was soon identified as Ms. Smith—was found inside a Sony box in a canal on Alligator Alley. Police soon discovered that Ms. Smith was seen leaving "Thee Dollhouse" in the company of Hernandez around 5–6 a.m. on March 20. Later that afternoon, Hernandez received a call from Massaro. Hernandez told Massaro that "things got a little messy," that he had just "tied up the loose end," and that he had a package he needed to "get rid of." Massaro called co-defendant "Sonny" Silverman and instructed him to bring his truck to the pizzeria. Together, Silverman, Massaro, Hernandez, and Dominick Marchese hid the body and effects of Ms. Smith.[2] The next day, March 21, Massaro sent some of his employees to Hernandez's hotel room to help Hernandez move out and to dispose of evidence. Still, when the police searched the room a few days later, they found several receipts. including

---

[2] There is no dispute that Massaro and Hernandez hid the body.

4

one for the Sony box. Police also found traces of Smith's blood. A warrant issued for Hernandez's arrest.

Meanwhile, on March 26, Massaro asked Valdes to kill Hernandez because of the threat he posed. Valdes and Garcia planned to kill Hernandez by injecting him with cocaine (to make his death look accidental), using needles provided by Massaro. Valdes and Garcia, however, were unable to find Hernandez. The next day, Hernandez showed up at the pizzeria, but Massaro told Valdes not to kill him because Hernandez was driving Massaro's car and Massaro did not want blood in his car. Later that day, Hernandez anonymously called police and said that two Colombians had killed Smith because they were afraid she would turn them in for writing bad checks (subsequently, in his post-arrest interview, Hernandez reiterated Smith's involvement in the check operation). Hernandez was located and arrested on March 28.

After being advised of his rights, Hernandez waived them and gave a statement in which he confessed to having accidentally killed Smith during "rough sex." On March 29, during an intercepted phone call to Massaro, Hernandez related the "story" he had given to the police and told Massaro there was nothing to worry about because he would be taking "the whole rap." The medical examiner subsequently ruled Smith's death a homicide by strangulation.

5

## II. DISCUSSION

A. *The Transcription Objection*

Preliminarily, Appellants contend a new trial is required because the court reporter did not record the tape-recorded evidence played to the jury, and therefore it is unclear what tapes were played to the jury. In *United States v. Charles*, 313 F.3d 1278 (11th Cir. 2002), *cert. denied*, 123 S. Ct. 2588 (2003). this Court set forth the following standard for granting new trials based on incomplete trial transcripts:

> We have developed a bifurcated standard for determining whether an incomplete trial transcript entitles an appellant to a new trial. If the same attorney represents an appellant at trial and on appeal, a new trial may be granted "only if the defendant can show that the failure to record and preserve a specific portion of the trial visits a hardship on him and prejudices his appeal." But if a new attorney represents the appellant on appeal, a new trial is necessary if there is a substantial and significant omission from the trial transcript.

*Id:* at 1283 (internal citation and footnote omitted). Appellants are not represented by their trial attorneys, and thus the "substantial and significant omission" standard applies.

Since the filing of the briefs, we remanded this case to the district court for the limited purpose of clarifying the record on appeal—specifically, for the district court to clarify which tape-recorded evidence was played and when. The parties

6

entered into a 20-page stipulation on September 17, 2003, which was adopted by

order of the district court the next day, that specifies what tape recordings were

played and provides pinpoint cites to the record to identify when they were played.

Given this stipulation, there is no longer a "substantial and significant omission"

in the record that might warrant a new trial.

B. *The Severance Motions*

Both Appellants argue the district court should have granted their requests

to sever the trial. Fed. R. Crim. P. 8(b) permits the joinder of two or more

defendants in the same indictment if they are alleged to have participated in the

same act or transaction or series of acts or transactions constituting an offense or

offenses. There is a preference that defendants indicted together be tried together,

*United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995), particularly in

conspiracy cases, *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989).

Even where initial joinder is proper, the defendant may move for a severance

under Fed. R. Crim. P. 14. A motion to sever need not be granted unless the

defendant shows a "serious risk that a joint trial would compromise a specific trial

right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." *Zafiro v. United States*, 113 S. Ct. 933, 938 (1993).

Denials of motions to sever under Fed. R. Crim P. 14 will be reversed only for abuse of discretion. *Morales*, 868 F.2d at 1571.

Hernandez argues he was not a "made-man," but merely associated with Massaro's legitimate businesses and, even if he was involved in some counterfeiting, he had no knowledge of Massaro's ties to the Gambino crime family. He further argues that Smith's "accidental" death had nothing to do with the counterfeiting scheme. Finally, Hernandez argues it is improper to join his case with the individual who placed a "hit" on him.[3]

These arguments are not persuasive. Hernandez has not demonstrated that a specific trial right was compromised by joint trial, or that the jury could not make a reliable judgment about guilt or innocence in a joint trial. *See Zafiro*, 113 S. Ct. at 938. There was significant evidence establishing Hernandez's ties to Massaro, and his ties to Trentacosta and the Gambino Family. Likewise, there was evidence of Hernandez's knowledge of these ties—indeed, soon after he was arrested, Hernandez told police he knew many people connected to organized crime and wanted to provide information.

---

[3] Hernandez also refers to "mutually antagonistic defenses," as a basis for severance. He fails, however, to specify what defenses were antagonistic.

8

The Appellants[4] also attempt to make a "spillover" argument, contending "the jury was unable to separate the evidence pertaining to [them] from that pertaining to [their] co-defendants, and that the spillover effect of the latter caused [them] to suffer compelling prejudice." *United States v. Starrett*, 55 F.3d 1525, 1553 (11th Cir. 1995). The key question is whether the jury could "individualize each defendant" and make individualized guilt determinations. *Id.* Here, the district court instructed the jury on numerous occasions as to the importance of considering each charge and each defendant separately and individually, and the jury appears to have rendered individualized verdicts. Trentacosta, for example, was found not to be involved in Smith's murder, and Massaro was acquitted on Count 25 (felon in possession). *See United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989) ("The jury's ability to isolate the evidence and consider it against the separate defendants is best illustrated by its acquittal of Manzano on Count III, resisting a federal officer."). Accordingly, we are not convinced by the spill-over argument.

Appellants have failed to meet their "heavy burden" to show that joinder was improper or that severance was required. They have not shown significant

---

[4] Trentacosta adopted the arguments of Hernandez and Massaro, but did not brief the issue himself.

prejudice to a specific trial right, or that the jury was unable to make individual determinations of guilt or innocence. Therefore, we affirm the district court's denial of the severance motions.

C. *Sufficiency of the Evidence*

Both Hernandez and Trentacosta insist there was insufficient evidence to support their convictions. This Court reviews sufficiency of the evidence presented at trial de novo, with the evidence reviewed in the light most favorable to the Government. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence. *Id.*

To establish a RICO conspiracy under 18 U.S.C. § 1962(c), the Government must prove the defendant "objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes." *United States v. Starrett*, 55 F.3d 1525, 1544 (11th Cir. 1995). The Government may show agreement in two ways: "(1) by showing an agreement on an overall objective, or (2) . . . by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a 'single objective' conspiracy." *Id.* "If the government proves an

agreement on an overall objective, then it is 'not necessary that the defendant agree to personally commit two predicate acts . . . .'" *Id.* (citation omitted).

### 1. *Hernandez*

Hernandez does not contest his bank fraud convictions (Counts 2–16), and these acts constitute predicate acts sufficient to support the RICO conviction. Hernandez's claims of ignorance of the organized crime ties are belied by his statements to Massaro after his arrest that the police "had everybody's picture," and that he recognized "everybody except two guys." Hernandez also told the police that he had a lot of information about organized crime to share. Hernandez was also intimately involved in Massaro's criminal activities. There was sufficient evidence for the jury to conclude Hernandez was aware of Massaro's connections to organized crime.

Moreover, Hernandez's arguments that Smith's death was not related to Gambino family interests are not persuasive. The evidence showed that Smith was involved in the counterfeit check operation, or at least aware of it—on numerous occasions, she had gone to Office Depots and purchased merchandise with counterfeit checks and had returned such merchandise for cash—and there was evidence suggesting that Massaro believed Smith had given information to the police. Hernandez's initial story to the police noted that Smith was killed because

(the "two Colombians") were afraid she would turn them in for writing bad checks. After Smith's death, Massaro called Hernandez at his hotel, and Hernandez stated that "things got a little messy," that he had "tied up the loose end," and that "I gotta package I gotta get rid of." Massaro did not act surprised by this news and, immediately thereafter, procured the truck from Silverman to dispose of the body. After his arrest, Hernandez called Massaro from the police station and told him that "my story was that . . . it was like rough sex . . . . So you don't have to worry about that."

The Government's inability to produce a tape-recorded discussion planning the murder is not decisive. The Government wiretap of Massaro's phone was authorized less than two days before the murder, and there was evidence that Hernandez was with Massaro the day before the murder—explaining why there were no intercepted phone calls "planning" the murder. As noted above, Hernandez's post-arrest phone call to Massaro suggests that Hernandez's account of Smith's death was a "story," not the truth. Additionally, there was medical evidence presented that was inconsistent with Hernandez's "rough sex" account of Smith's death.

In sum, the evidence was sufficient to allow the jury to conclude Hernandez objectively manifested, through words or actions, an agreement to participate in

the affairs of the enterprise through the commission of two or more predicate acts. Therefore, we reject Hernandez's sufficiency of the evidence objection.

2. *Trentacosta*

Unlike Hernandez, Trentacosta did not commit any predicate acts, and his conviction is based solely on the jury's conclusion that he agreed to the overall objective of the charged conspiracy. Trentacosta, though, argues the evidence was not sufficient to reach this conclusion—that the Government essentially made insinuations based on his long friendship with Massaro and his stipulation to being a member of the Gambino Crime Family. Specifically, Trentacosta disputes the Government's evidence of tribute payments from Massaro (in the form of payments from Father & Son in Jacksonville to Father & Son Consulting in Atlanta). He also argues the jury could not reasonably conclude that he "controlled" Massaro. Rather, according to Trentacosta, the "unavoidable" explanation for the evidence presented at trial was that Massaro used Trentacosta's name when it suited him and partly because his "real" boss, "Fat Andy" Ruggiano, was in jail.

While Trentacosta's characterization of the evidence is plausible, the jury was free to reach an alternative conclusion—that Trentacosta controlled Massaro and that he received tribute from Massaro's criminal activities. *See United States*

13

*v. Goggin*, 853 F.2d 843, 846 (11th Cir. 1988) (when presented with two narratives by the parties, jury was entitled to choose the account offered by the government). Here, the Government presented evidence regarding Mafia structure and protocol explaining how the tribute system worked, as well as fact witnesses linking Massaro and Trentacosta and describing the pattern of payments between the two. There was evidence that Massaro deferred to Trentacosta in business matters, that he required Trentacosta's approval before certain loans were made, and that Massaro acted as an intermediary between Trentacosta and the Federal Bureau of Investigation (FBI) on at least one occasion. Viewed in the light most favorable to the Government, this evidence can reasonably be interpreted as supporting the conviction. Therefore, we reject Trentacosta's sufficiency arguments.

D. *Co-Conspirator Hearsay*

Prior to trial, counsel for Hernandez and Trentacosta challenged whether sufficient evidence existed to permit the use of various co-conspirator hearsay statements, generally involving co-conspirator testimony and intercepts of phone conversations in which Massaro implicated Hernandez and Trentacosta. The district court, after conducting a hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979), notified Appellants that it found "sufficient proof for the

14

existence of the RICO conspiracy that's alleged in the indictment." Trentacosta

now contends there was no substantial independent evidence to corroborate the

existence of the alleged conspiracy and his participation in it.

A district court's determination that a statement is in furtherance of a

conspiracy is subject to clear error review.[5] *United States v. Garcia*, 13 F.3d 1464,

1473 (11th Cir. 1994). Any such error is subject to harmless error analysis. *Id.*

Rule 801(d)(2)(E) excludes from the definition of hearsay statements made

"by a coconspirator of a party during the course and in furtherance of the

conspiracy." Thus, testimony by a witness to co-conspirator statements may be

admissible "if the trial judge determines that the government has proven by a

preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and

the declarant participated in the conspiracy, and (3) the statement was made during

the course of and in furtherance of the conspiracy." *Garcia*, 13 F.3d at 1472–73.

The proffered statements alone are not sufficient to establish the existence of the

conspiracy, Fed. R. Evid. 801(d)(2)(E), but may be considered in conjunction with

independent evidence of the conspiracy, *United States v. Byrom*, 910 F.2d 725,

735 (11th Cir. 1990).

---

[5] The Government contends the plain error standard should apply because Trentacosta did not renew his objections at trial, and stated affirmatively that he had no objections. We need not decide this issue because, even under the clear error standard, we affirm.

In this case, in addition to the contested co-conspirator statements, the Government submitted tape recordings on which Trentacosta's voice was captured and documentary evidence linking Massaro and Trentacosta. This evidence was sufficient to establish the existence of the charged conspiracy and Trentacosta's involvement in it. The district court did not clearly err in admitting the co-conspirator hearsay statements.

E. *Rule 404(b) Evidence*

Both Appellants contest the admission of evidence regarding (1) a 1988 gas-tax scam in New York City, and (2) Massaro's attempt to take over the Trump Financial Group and Trentacosta's involvement in this activity. Trentacosta contends the evidence should have been excluded under Fed. R. Evid. 404(b). Although this evidence was admitted against Trentacosta, Hernandez also objects to its admission as unduly prejudicial under Fed. R. Evid. 403. For purposes of this opinion, we assume without deciding that this evidence was in fact Rule 404(b) evidence, and not "direct" evidence against Trentacosta.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Cunningham*, 194 F.3d 1186, 1193 (11th Cir. 1999). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

16

may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident . . . ." Fed. R. Evid. 404(b). The rule permits the introduction of

evidence of a prior or uncharged act if the Government can show: (1) a proper

purpose for introducing the evidence; (2) the prior act occurred and that the

defendant was the actor; and (3) the probative value of introducing the evidence

outweighs any prejudicial effect the evidence might have. *United States v.*

*Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995).

We find the Government satisfied these requirements in this case. Both the

gas-tax scam evidence and the Trump Financial evidence were admitted for a

proper purpose[6] and both involved Trentacosta. Nor has Trentacosta (or

Hernandez) shown that any prejudicial impact from this evidence outweighed its

probative value. The evidence has significant probative value as to Trentacosta's

control over Massaro—a critical issue in this case—as well as demonstrating how

the illegal relationships between the Appellants developed in the context of

organized crime. *See United States v. Diaz*, 176 F.3d 52, 79–80 (2d Cir. 1999).

Therefore, we conclude the district court did not abuse its discretion.

---

[6] By pleading not guilty and categorically denying his involvement in the conspiracy,
Trentacosta thereby made his intent—a permissible 404(b) purposes—a material issue. *See
United States v. Costa*, 947 F.2d 919, 925 (11th Cir. 1991).

17

F. *The Motion to Suppress*

Hernandez argues his March 28 statements to law enforcement at the time of his arrest should have been suppressed because they were not freely, knowingly, and voluntarily given. *See generally Miranda v. Arizona*, 86 S. Ct. 1602 (1966). He contends his statements (admitting involvement with organized crime members, admitting to passing counterfeit checks, and asserting that Smith's death was accidental due to "rough sex") were extracted by threats of violence, threats of enhanced prosecution for first degree murder, and by promises of a reduction of charges and admission into a witness protection program. He also argues his waiver of rights pertained only to the check charges, not any conduct regarding Ms. Smith's death.

At the suppression hearing, the magistrate credited the law enforcement officers' account of the interrogation and ruled the statements had been made voluntarily in hope of obtaining some benefit for cooperation. Hernandez did not object to the report and recommendation of the magistrate following the suppression hearing. Accordingly, Hernandez may attack the factual findings of the district court only for plain error or manifest injustice. *United States v. Hall*, 716 F.2d 826, 828–29 (11th Cir. 1983).

18

Both the police and the FBI read Hernandez his *Miranda* rights, and
Hernandez signed a waiver form. Both Broward Detective Ilarazza and FBI
Special Agent Grover testified that no threats or promises were made. Detective
Ilarazza also testified that he told Hernandez there was a warrant for his arrest for
murder and that, when Hernandez started telling him about his connection to
organized crime, he directed the conversation back to the murder. Hernandez has
presented no evidence (he did not testify at the suppression hearing) as to what
happened, and the magistrate judge was entitled to credit the testimony of the law
enforcement officers over Hernandez's account. Therefore, we affirm the denial
of the motion to suppress.

## G. *Hernandez's Sentencing Objections*

Hernandez raises several objections to his sentence. First, he argues the
district court erroneously applied the two-level obstruction of justice
enhancement. U.S.S.G. § 3C1.1. This enhancement, however, had no effect on
Hernandez's sentence. For purposes of calculating the Guideline range,
Hernandez's total offense level of 45 was treated as 43, which provides for life
imprisonment, because 43 is the highest offense level listed in the sentencing
table. U.S.S.G. Ch. 5 Pt. A & cmt. n.2. Thus, even without the enhancement,
Hernandez's total offense level would be 43, and he would still be subject to life

19

imprisonment. *Cf. United States v. Rice*, 43 F.3d 601, 608 (11th Cir. 1995) (declining to address propriety of enhancement where defendant's mandatory sentence remained life imprisonment under statute).

Even if this objection was not moot, we would affirm. We review the district court's factual findings for clear error and give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). "[W]here the defendant's credibility or demeanor is not at issue, and the defendant's conduct can be clearly set forth in detailed, non-conclusory findings, we review de novo the district court's application of the enhancement to those facts." *United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003).

Pursuant to U.S.S.G. § 3C1.1, a defendant may receive a two-level enhancement if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." This enhancement applies where the defendant destroys or conceals evidence that is material to an official investigation. U.S.S.G. § 3C1.1, cmt. n.4(d). Here, the district court found a combination of factors, including the disposal of Smith's body, the anonymous phone call made to police, and the cleaning of Hernandez's apartments, merited the enhancement. We agree.

Hernandez also argues that imposition of a life sentence violated *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), because the jury did not specifically find that Hernandez murdered Smith. This argument is without merit because the jury necessarily found Hernandez murdered Smith. The verdict form submitted to the jury contained the following interrogatory: if Hernandez is guilty of the RICO conspiracy, did he agree to the commission of murder in violation of Fla. Stat. § 782.04? The jury answered "yes." Additionally, the district court also instructed the jury (1) that a racketeering activity included acts or threats involving murder, and (2) for the jury to convict Hernandez of the VICAR count, it had to find that Hernandez murdered Smith. Accordingly, there was no *Apprendi* violation.

Finally, Hernandez argues that the district court's refusal to continue the sentencing hearing was reversible error. We review a district court's ruling on a continuance for abuse of discretion. *United States v. Garmany*, 762 F.2d 929, 936 (11th Cir. 1985).

The pre-sentence investigation report was provided to Hernandez and his attorney two weeks prior to sentencing, well within the statutory notice period. See 18 U.S.C. § 3552(d). Hernandez was permitted to file objections to the PSI out of time—indeed, one day before sentencing—and did not at that time ask for a

21

continuance. Nor did Hernandez attempt to contact any of his proposed witnesses prior to the sentencing hearing. Under these circumstances, the district court did not abuse its discretion when it denied Hernandez's request at sentencing for a continuance.

## III. CONCLUSION

Appellants have not shown error with regard to the evidence or conduct of the trial that merits reversal of their convictions. Nor has Hernandez presented any meritorious objection to his sentencing. Accordingly, we affirm their convictions and sentences.

AFFIRMED.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| APPELLEE, | ) |
| | ) |
| -versus- | )    APPEAL NO: 02-12352-AA |
| | ) |
| ANTHONY TRENTACOSTA, | ) |
| | ) |
| APPELLANT. | ) |

---

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Local Rule 28-2(b) counsel for Appellant Anthony Trentacosta certifies that the following persons may have an interest in the outcome of this case:

1. Edward T. M. Garland, Appellant Counsel for Anthony Trentacosta

2. Fred Haddad, Esq., Trial Counsel for Frederick J. Massaro

3. Honorable Paul C. Huck, United States District Court Judge, Southern District of Florida

4. Benedict P. Kuehne, Appellant Counsel for Frederick Massaro

5. Marcos Daniel Jimenez, United States Attorney

6. Stephen H. Rosen, Trial Counsel for Anthony Trentacosta

7. Richard Rosenbaum, Appellant Counsel for Ariel Hernandez

8.  Donald F. Samuel, Esq., Appellant Counsel for Anthony Trentacosta

9.  Anne R. Schultz, Esq., Chief, Appellate Division

10. Anthony Trentacosta (Presently Incarcerated at FCI Estill)

11. Jeffrey Weinkle, Esq., Appellant Counsel for Ariel Hernandez

**GARLAND, SAMUEL & LOEB**

BY:_____
     DONALD F. SAMUEL
     Ga. State Bar No. 624475

BY:_____
     W. CHARLES LEA
     Ga. State Bar No. 442006

3151 Maple Drive, NE
Atlanta, Georgia  30305
404-262-2225
Fax 404-365-5041

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,  )
                         )
        APPELLEE,     )
                         )
-versus-              )     APPEAL NO: 02-12352-AA
                         )
ANTHONY TRENTACOSTA,    )
                         )
        APPELLANT.   )

---

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and

foregoing Petition for Panel Rehearing Pursuant to FRAP 40 upon the following by

facsimile transmission and by United States Mail-Delivery:

    Lawrence D. LeVecchio, Esq.
    Jeffrey H. Sloman, Esq.
    Assistant United States Attorneys
    Office of the United States Attorney
    500 East Broward Boulevard
    7th Floor
    Fort Lauderdale, Florida  33301

This _____15th_____ day of July, 2004.

                               Donald F. Samuel
                               Ga. State Bar No. 624475

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 24 2004

THOMAS K. KAHN
CLERK
```

No. 02-12352-AA

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

FREDERICK J. MASSARO,

                              Defendant,

ARIEL HERNANDEZ,
ANTHONY TRENTACOSTA,
a.k.a.
Tony Pep

                              Defendants-Appellants.

--------------------------

On Appeal from the United States District Court for the
Southern District of Florida
--------------------------

BEFORE: BLACK and MARCUS, Circuit Judges, and SMITH*, District
Judge.

PER CURIAM:

    The petition(s) for rehearing filed by Appellants' is DENIED.


ENTERED FOR THE COURT:

_____
UNITED STATES CIRCUIT JUDGE


*Honorable Fern M. Smith, United States District Judge for the
Northern District of California, sitting by designation.

— Exhibit B —                              ORD-41

# IN THE UNITED STATES COURT OF A~~PPEALS~~

## FOR THE ELEVENTH CIRCUIT



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 2 4 2004

THOMAS K. KAHN
CLERK

No. 02-12352-AA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARIEL HERNANDEZ,
ANTHONY TRENTACOSTA,
a.k.a. Tony Pep

Defendants-Appellants.

--------------------------

On Appeal from the United States District Court for the
Southern District of Florida

--------------------------

O R D E R:

Appellant's Trentacosta's "Emergency Motion to Enlarge Issues on Appeal"

is DENIED.  See U.S. v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001); U.S. v.

Ardley, 242 F.3d 989, 990 (11th Cir. 2001); U.S. v. Nealy, 232 F.3d 825, 830

(11th Cir. 2000).

UNITED STATES CIRCUIT JUDGE

Exhibit C

# United States Court of Appeals

## For the Eleventh Circuit

| | |
|---|---|
| No. 02-12352 | **FILED**<br>U.S. COURT OF APPEALS<br>ELEVENTH CIRCUIT<br><br>Jun 24, 2004<br><br>THOMAS K. KAHN<br>CLERK |
| District Court Docket No.<br>00-06273-CR-PCH | |

UNITED STATES OF AMERICA,

         Plaintiff-Appellee,

versus

FREDERICK J. MASSARO,
         Defendant,

ARIEL HERNANDEZ,
ANTHONY TRENTACOSTA,
a.k.a.
Tony Pep,

         Defendants-Appellants.

---------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
---------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:    June 24, 2004
For the Court:    Thomas K. Kahn, Clerk
By:    Jackson, Jarvis

ISSUED AS MANDATE
SEP 0 1 2004
U.S. COURT OF APPEALS
ATLANTA, GA.

— Exhibit D —

**Charles Lea**

**From:** Yvonne V. Gray
**Sent:** Monday, November 21, 2005 3:03 PM
**To:** Charles Lea

On Wednesday, November 16, 2005 I spoke with Brandy Kaz, Mr. Trentacosta's case manager at FMC Butner who advised our federal express package (tracking no. 837738204735) has been received by the facility. It had not yet been delivered to Mr. Trentacosta as "they have over 30,000 inmates there and there is no way for them to specially handle packages". She will let Anthony know to make sure he sends the Verification back to us immediately in the return overnight envelope I provided. I attempted to track the return package sent to Mr. Trentacosta but it has not yet been entered into the system. Today, November 21, 2005, I made several attempts to reach Ms. Kaz to determine the status of the return package and have been unable to reach her each time.

— Exhibit E

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

ANTHONY TRENTACOSTA,     )
    Petitioner          )     **Habeas Corpus Action**
    Reg. No. 95851-004   )     **Pursuant to 28 U.S.C. § 2255**
    FMC Butner        )
    PO Box 4600       )     **(Previously case number**
    Old N. Carolina Hwy 75 )     **00-6273-CR-HUCK)**
    Butner, NC 27509   )
                        )
- VERSUS -          )
                        )
UNITED STATES OF AMERICA and )
WARDEN A. F. BEELER OF FMC  )
BUTNER, FEDERAL MEDICAL   )
CENTER,            )
                        )
    RESPONDENTS.    )

## CERTIFICATE OF SERVICE

I hereby certify that I have this 21st day of November 2005, served a copy of

the foregoing, *Motion To Vacate, Set Aside, Or Correct Sentence By A Person In*

*Federal Custody Pursuant To 28 U.S.C. § 2255*, upon the below parties:

> Lawrence D. LeVecchio, Esq.
> Jeffrey H. Sloman, Esq.
> Assistant United States Attorneys
> Office of the United States Attorney
> 500 East Broward Boulevard
> 7th Floor
> Fort Lauderdale, Florida 33301
>
> Marcos Daniel Jimenez
> United States Attorney
> Anne R. Schultz

6

Assistant United States Attorney
99 N.E. 4th Street
Miami, Florida  33132-211

Warden A. F. Beeler
Federal Medical Center
PO Box 1600
Old N. Carolina Hwy 75
Butner, NC  27509

By certified mail, return/receipt requested.

BY: _____
      DONALD F. SAMUEL,
      GA. BAR # 624475

*COUNSEL FOR PETITIONER*

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com